**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN M. WEATHERS, et al.,**<br><br>            **v.**<br><br>**THE SCHOOL DISTRICT OF<br>PHILADELPHIA, et al.** | **CIVIL ACTION**<br><br>**NO.  18-3982** |

**MEMORANDUM RE: MOTION TO SEVER AND REMAND**

Baylson, J.                                                           **March 18, 2019**

### I.    Introduction

In this case, Plaintiffs John Weathers, Richard Dido, and David Taylor (together, "Taxpayer Plaintiffs") as well as Plaintiff 21st Century Partnership for STEM Education ("21PSTEM") allege that the request-for-proposal ("RFP") process of Defendants School District of Philadelphia and the School Reform Commission[1] (together, the "School District" or "Defendants") violates state and federal procurement regulations.  Plaintiff 21PSTEM also alleges that Defendants' refusal to provide it with a debriefing after it filed a bid protest violated its free speech and petition rights under the First Amendment.  The First Amended Complaint alleges two causes of action:

1.  **Count I**: Taxpayer Plaintiffs and 21PSTEM seek declaratory and injunctive relief to enjoin Defendants from continuing to violate Pennsylvania common law, the School District's Procurement Manual, the School District's RFPs, and applicable federal procurement regulations when procuring professional services.

2.  **Count II**: 21PSTEM alleges that Defendants' refusal to provide 21PSTEM with a debriefing after it filed a bid protest amounts to unlawful retaliation in violation of

---

[1] Defendants aver that the School Reform Commission ceased to exist as of June 30, 2018 and that a Board of Education now governs the School District in its place.  (ECF 10, "Resp." at 3 n.1.)  The First Amended Complaint, filed on August 28, 2018 (ECF 1, Notice of Removal Ex. A, "FAC"), and the Proposed Second Amended Complaint, filed on October 3, 2018 (ECF 6-1, "SAC") name the School Reform Commission as a Defendant.

the First Amendment of the United States Constitution and seeks declaratory and injunctive relief.

Presently before this Court is Plaintiffs' Motion to Sever and Remand Plaintiffs' procurement claim–Count I of the First Amended Complaint. For the reasons discussed below, the Motion is denied.

## II.  Factual Background

Taxpayer Plaintiffs are residents of Philadelphia, Pennsylvania who own property situated within the School District for which they have paid real estate taxes to the District and the City of Philadelphia. (FAC ¶¶ 5–8.) They also pay taxes to the Commonwealth of Pennsylvania, which provides funding support to the School District and the School Reform Commission. (Id.) Dr. Weathers and Mr. Taylor are employed by Plaintiff 21PSTEM: Dr. Weathers as a Senior Researcher and Mr. Taylor as a Senior Web Developer. (Id. ¶¶ 5, 7.) Plaintiff 21PSTEM is a non-profit organization that offers consultative services to improve the performance of teachers, school principals, and other supervisors. (Id. ¶¶ 9–10.) On several occasions, 21PSTEM has responded to RFPs for professional services issued by the School District, including RFPs covering services that would be funded at least in part by federal grants, and intends to do so in the future. (Id. at ¶ 11.) Defendant School District is a public school district and political subdivision of the Commonwealth of Pennsylvania and is governed by Defendant School Reform Commission. (Id. at ¶¶ 13–14.)

Defendant School District adopted School District Policy No. 610 pursuant to its authority to adopt reasonable regulations related to procurement under Pennsylvania's Public School Code. (Id. ¶¶ 19, 21.) Policy No. 610 provides that the School District "shall obtain competitive bids and price quotations for products and services where such bids or quotations are required by law or may result in monetary savings to the school district." (Id. ¶ 21; id. Exs. 1–2.) Policy No. 610

also requires the School District's Office of Procurement Services to "maintain a Policies and Procedures Manual to identify the district's process for obtaining competitive bids and price quotations as required by applicable law." (FAC ¶ 22.)

The Office of Procurement Services maintains a Policies and Procedures Manual ("Procurement Manual"), which states that the purpose of a competitive procurement process "is to ensure that bid solicitations are awarded on the basis of a competitive process designed to select qualified vendors to provide goods and services." (Id. ¶ 26; id. Ex. 3.) Pursuant to the Procurement Manual, the RFP process is "generally used to select a vendor for a professional or consulting service." (FAC ¶ 29.) When the School District procures such services through an RFP, the Procurement Manual states that the RFP process described in the Manual "**MUST** be followed" and that "[c]ompliance with this process and file management are **CRITICAL** to defend an evaluation decision." (Id.) The Procurement Manual also provides that "[t]here must be a common standard throughout the competitive RFP process," which requires "an understanding on the part of all competitors of the basis upon which the award of contract will be made." (Id. ¶ 30.) Similarly, "[a]ll factors or criteria that will be used to evaluate proposals must be clearly set forth in the RFP," and "[t]he RFP shall clearly define all evaluation factors or criteria in order of importance, including price." (Id. ¶ 31.) The Procurement Manual explains that a "common standard" on which bids and proposals are based is central to competitive procurement, and that the purpose of bidding requirements is to invite competition and secure the best work or supplies at the lowest price practicable. (Id. ¶¶ 27–28.)

In conducting the RFP evaluation process, the Procurement Manual requires the School District's Evaluation Committee to review and evaluate all proposals in accordance with the criteria identified in the RFP; the Commission may not consider factors or criteria that are not

specified in the RFPs in its evaluation.  (Id. ¶ 32.)  The Procurement Manual also states that an unsuccessful bidder must be debriefed and provided with the basis for the selection and award of the contract at its request.  (Id. ¶ 33.)  These debriefings must include copies of the evaluator's scoresheets and the overall evaluated cost and technical rating of the winning bidder.  (Id.)

When a procurement by the School District would be paid for at least in part by federal grant money, federal regulations require the District to follow the RFP procedures outlined in the Procurement Manual.  (Id. ¶¶ 39–40) (citing 2 C.F.R. § 200.318; id. Ex. 4.)  Federal law also requests RFPs to identify all evaluation factors and their relative importance.  (FAC ¶ 41) (citing § 200.320(d)(1).)  Moreover, a written policy adopted by the District acknowledges that a procurement that involves federal funds must "adhere to all of the procurement standards identified in 2 CFR Part 200.317, et seq.," and that if District policies are more restrictive than state or federal regulations, the District must follow its own policies.  (FAC ¶ 42.)

In its day-to-day operations, the School District takes the position that the Procurement Manual "does not have the force of law."  (Id. ¶ 46; id. Ex. 5.)  The School District's practice is also to refuse to provide a debriefing to any RFP respondent that files a bid protest.  (FAC ¶ 49.)

On November 9, 2017, the School District, through its Office of Procurement Services, issued RFP-567, which solicited proposals for a professional services contract involving job training and professional development support for first-and second-year principals.  (Id. ¶ 51.; id. Ex. 6.)  Under the awarded contract, services would begin on July 1, 2018 and end on June 30, 2020.  (FAC ¶ 51.)  Federal funds would be used to pay for a portion of the costs of the new principal coaching requested.  (Id. ¶ 53.)  RFP-567 listed eight evaluation criteria but did not provide any information about the relative weight attributed to each criterion.  (Id. ¶ 56.)  However, in an Addendum to RFP-567, the School District "strongly suggested that price would be a

paramount consideration" by stating that RFP-567 was a "proposal[] based on the District seeking the most competitive pricing." (Id.; id. Ex. 7.) However, when the School District evaluated responses to RFP-567, it made pricing the least important factor in its evaluation matrix. (FAC ¶ 58.) The winning respondent submitted a proposal at the maximum allowable budget of $4 million, but it received the same or higher pricing scores as respondents who submitted proposals for less than $3 million. (Id. ¶ 59.) Though the RFP listed eight criteria, the evaluation matrix completed by the School District did not have eight scoring sections. (FAC ¶¶ 61–63.)

After 21PSTEM was not awarded a contract for RFP-567, 21PSTEM requested a debriefing and filed a bid protest. (Id. ¶ 78.) The School District refused to provide a debriefing to 21PSTEM because it had filed a bid protest with respect to RFP-567. (Id. ¶ 79.)

### III. Procedural History

On May 30, 2018, Taxpayer Plaintiff's filed the Original Complaint against Defendants School District, School Reform Commission, and The New Teacher Project, which was awarded the services contract, in the Court of Common Pleas of Philadelphia County. (ECF 1) The Original Complaint alleged that Defendants School District and School Reform Commission unlawfully conducted an RFP process involving a professional development program for new principals and sought a preliminary injunction to enjoin the enforcement of the contract awarded to the New Teacher Project. (Id. ¶¶ 15–43.) Taxpayer Plaintiffs withdrew their request for preliminary injunction with respect to the specific contract, and Defendants School District and School Reform Commission filed preliminary objections to the Original Complaint on July 17, 2018.[2] (ECF 7, Motion to Sever and Remand, "Mot." at 2; ECF 10, "Resp." at 2; ECF 1 at 3, ¶ 3.)

On August 28, 2018, Plaintiffs filed the First Amended Complaint, which added 21PSTEM

---

[2] These documents do not appear on the federal docket.

as a Plaintiff and voluntarily dismissed The New Teacher Project as a Defendant. (ECF l Ex. A.) On September 14, 2018, Defendants filed a Notice of Removal in this Court, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331 (ECF 1). Defendants contend in the Notice of Removal that this Court has jurisdiction because the First Amended Complaint added allegations that Defendants' practices in the procurement of professional services violate federal procurement regulations and that Defendants violated 21PSTEM's First Amendment rights. (Id. at 3, ¶¶ 6–7.) On September 21, 2018, Defendants filed a Motion to Dismiss the First Amended Complaint for failure to state a claim, alleging that Count I should be dismissed because Taxpayer Plaintiffs failed to challenge the award of a specific contract, and 21PSTEM, a disappointed bidder, has no right to challenge the School District's procurement practices under Pennsylvania law (ECF 4). Defendants aver that Count II should be dismissed as speculative (Id.)

Plaintiffs filed a Motion for Leave to Amend their Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) on October 3, 2018, attaching a Proposed Second Amended Complaint. (ECF 6-1). On October 5, 2018, Plaintiffs filed a Motion to Sever and Remand (ECF 7). The Motion alleges that the procurement claim–Count I of the First Amended Complaint–should be severed and remanded because the principal relief Plaintiffs seek is an injunction requiring the School District to follow state law. (Id. at 1.) This Court issued an Order on October 10, 2018, stating that Plaintiffs' obligation to respond to Defendants' Motion to Dismiss, and Defendants' obligation to respond to Plaintiffs' Motion for Leave to Amend, were stayed pending a ruling on Plaintiffs' Motion to Sever and Remand (ECF 8). Defendants filed a Response to the Motion to Sever and Remand on October 25, 2018 (ECF 10), and Plaintiffs filed a Reply on November 1, 2018 (ECF 11, "Rep.").

Following a December 19, 2018 hearing on the Motion to Sever and Remand, the Court

denied the Motion to Dismiss the First Amended Complaint as moot. (ECF 13). The same Order stated that the Court is inclined to confine its consideration of the issue of remand to the First Amended Complaint, but that the Court was inclined to permit Plaintiffs to amend the First Amended Complaint and make the Proposed Second Amended Complaint the operative complaint for the Court's consideration of the issue of standing. (Id. ¶¶ 1–3.) The Court also ordered Defendants to file a renewed Motion to Dismiss the Proposed Second Amended Complaint by January 15, 2019, Plaintiffs to file a Response by January 29, 2019, and Defendants to file a Reply by February 12, 2019. (Id. ¶ 4.) The parties filed the renewed Motion to Dismiss and the response and reply thereto (ECF 17, 19, 21). The Court is not ruling on the pending Motion to Dismiss the Second Amended Complaint at this time.

IV. **Legal Standard**

A. **Remand**

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in state court if the federal court would have had original jurisdiction over the action. Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Ramos v. Quien, 631 F. Supp. 2d 601, 606 (E.D. Pa. 2008) (Baylson, J.) (quoting Boyer, 913 F.2d at 111). "The removing defendant bears the heavy burden of persuading the [c]ourt to which the state action was removed that it has jurisdiction under the removal statutes." Corbitt v. City of Phila. Police Officer Thomas Horner, No. 16-5450, 2016 WL 6825917, at *1 (E.D. Pa. Nov. 16, 2016) (Baylson, J.) (quoting Batoff v. State Farm Ins. Co., 977 F.2d 858, 851 (3d Cir. 1974)).

"[T]he propriety of remand [must be] decided[] on the basis of the record as it stands at the time the petition for removal was filed." Swindell-Filiaggi v. CSX Corp., 922 F. Supp. 2d 514, 521 (E.D. Pa. 2013) (Baylson, J.) (quoting Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.,

605 F.2d 119, 123 (3d Cir. 1979)); see also Dailey v. Progressive Corp., No. Civ.A. 03-3797, 2003 WL 22794689, at *2 (E.D. Pa. Nov. 12, 2003) (Dalzell, J.) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) ("While [Plaintiff] would prefer that we consider the Amended Complaint in our jurisdictional inquiry, . . . we 'must focus on the plaintiff's complaint at the time the petition for removal was filed.'")). As a result, "[a] subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction." Dailey, 2003 WL 22794689, at *2 (quoting Westmoreland Hosp. Ass'n, 605 F.2d at 123).

### B. Original Jurisdiction

Where an action that includes non-removable claims is removed, "the district court shall sever all claims [not within the original or supplemental jurisdiction of the district court] and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(1)(B). To determine whether removal under Section 1441(c) is proper, a court must first determine whether any claims confer federal-question jurisdiction under Section 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. The existence of federal-question jurisdiction is "governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112–13 (1936)). A well-pleaded complaint may invoke federal-question jurisdiction "by plaintiffs pleading a cause of action created by federal law." Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162–63 (3d Cir. 2014) (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005)).

Even where federal law does not create the cause of action, a state law claim may also "arise under" federal law for purposes of Section 1331 if the four-part test set forth in Grable is met. Manning, 772 F.3d at 163. Under this four-part test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 558 U.S. 251, 258 (2013) (applying Grable). "Only a 'slim category' of cases satisfy the Grable test." Manning, 772 F.3d at 163 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)). "[T]he mere fact that the resolution of a state-law claim requires a court to consider federal law is not sufficient to confer federal question jurisdiction over a state law claim." TgaS Advisors, LLC v. Zensights, LLC, No. 16-1870, 2016 WL 2594643, at *3 (E.D. Pa. May 5, 2016) (Baylson, J.).

The Supreme Court explained in Grable "that federal question jurisdiction over state-law claims is confined 'to those [claims] that really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.'" Id. at *2 (quoting Grable, 545 U.S. at 313). Even then, however, "a request to exercise federal-question jurisdiction over a state action calls for a common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue, in a selective process which picks the substantial causes out of the web and lays the other ones aside." TGaS Advisors, 2016 WL 2594643, at *2 (internal quotation marks omitted) (quoting Grable, 545 U.S. at 313). Therefore, "[t]he critical question is: '[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities [?]'" TGaS Advisors, 2016 WL 2594643, at *3 (quoting Grable, 545 U.S. at 314).

### C. Supplemental Jurisdiction

Next, before determining whether removal under Section 1441(c) is proper, a district court must determine whether there is supplemental jurisdiction over a claim not arising under federal law. See 28 U.S.C. § 1367(a). Where a district court exercises federal question jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." Mitich v. Lehigh Valley Rest. Grp., Inc., No. 12-3825, 2012 WL 6209957, at *9 (E.D. Pa. Dec. 12, 2012) (Baylson, J.) (quoting § 1367(a)). In other words, "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." De Ascencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966), superseded by statute on other grounds, 28 U.S.C. § 1367(c)(3)), as recognized in Angeloni v. Diocese v. Scranton, 135 F. App'x 510, 514 (3d Cir. 2005).

Section 1367 also provides that a district court has discretion to decline to exercise supplemental jurisdiction over a state law claim if "the claim raises a novel or complex issue of [s]tate law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," the district court has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). Plaintiffs contend that Count I substantially predominates over Count II. (Mot. at 12–13.)

A state law claim may "substantially predominate[]" over a federal claim "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."

<u>Mitich</u>, 2012 WL 6209957, at *9 (quoting <u>Gibbs</u>, 383 U.S. at 726). In general, a district court will find that a state claim "substantially predominates" where it "'constitutes the real body of a case, to which the federal claim is only an appendage'–only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." <u>De Ascencio</u>, 842 F.3d at 309 (quoting <u>Borough of W. Mifflin v. Lancaster</u>, 45 F.3d 780, 789 (3d Cir. 1995)).

## V.    Discussion

The parties do not dispute that the Court has jurisdiction over Count II of the First Amended Complaint. Rather, Plaintiffs argue that Count I should be remanded because Count I does not arise under federal law, the Court lacks supplemental jurisdiction over Count I, the Court should abstain from deciding Count I, and Taxpayer Plaintiffs lack Article III standing to bring Count I in federal court. In response, Defendants contend that because Plaintiffs allege that Defendants violated federal law in both Counts of the First Amended Complaint, this Court has both original and supplemental jurisdiction over Count I. Further, Defendants argue that abstention is inapplicable here, and that Taxpayer Plaintiffs' lack of standing is a basis for dismissal, not remand. The Court addresses each argument in turn.

### A.  Federal Question Jurisdiction

#### i.   Created by Federal Law

Plaintiffs contend that Count I is created by state law because they are seeking an Order from the Court requiring Defendant School District to comply with state common law procurement standards and the School District's own RFPs. (Mot. at 6.) Though Plaintiffs concede that Count I alleges that Defendants violated federal procurement regulations, Plaintiffs point to the Proposed Second Amended Complaint to clarify that federal regulations are only relevant because a School

Reform Commission policy, a state policy, requires the District to follow federal regulations. (Id. at 6–7.)[3]

In response, Defendants argue that Count I is created by federal law because Count I includes allegations that Defendants violated substantive requirements imposed by the Code of Federal Regulations. (Resp. at 7.) Further, Defendants aver that because Plaintiffs expressly seek a declaration and injunction requiring the School District to comply with federal law, the federal Declaratory Judgments Act allows for this Court to adjudicate Count I. (Id. at 8.)[4]

The Court concludes that there is no federal question on the face of the First Amended Complaint, as it does not invoke the federal law affording Plaintiffs the right to declaratory or injunctive relief on Count I. Though the Declaratory Judgments Act allows this Court to adjudicate claims, as Defendants note, it does not confer jurisdiction. See Kelly, 868 F.3d at 281 n.4. As this Act also does not appear on the face of the First Amended Complaint, the operative pleading at the time the petition for removal was filed, Count I is not created by federal law.

### ii. Federal Jurisdiction Under Grable

Alternatively, the parties dispute whether Count I "necessarily raise[s] a stated federal issue" that is "actually disputed and substantial" under Grable. See Gunn, 568 U.S. at 258 (quoting Grable, 545 U.S. at 314).

### 1. Necessarily Raised

First, Plaintiffs argue that no federal question is "necessarily raised" by Count I because

_____

[3] As the Court must limit its consideration of the issue of remand to the First Amended Complaint, the Court does not consider Plaintiffs' allegations concerning the School Reform Commission policy, which do not appear in the First Amended Complaint.

[4] Defendants concede that the Federal Declaratory Judgment Act does not confer federal-question jurisdiction but argue that it does allow for the adjudication of federal-question claims. (Id. at 8) (citing Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 281 n.4 (3d Cir. 2017)).)

the Court may grant Plaintiffs the injunctive relief they seek solely based on state law. (Mot. at 8.) According to Plaintiffs, the federal regulations referenced in the First Amended Complaint only require the School District to follow the procedures outlined in the Procurement Manual. As the Procurement Manual is already binding on the School District, the federal regulations impose no additional requirement on Defendants. (Id.) (citing SAC ¶¶ 38–39.) Plaintiffs refer to their allegation that Defendants violated federal regulations as "an alternative theory" affording Plaintiffs the same relief to which they are entitled under state law. (Mot., at 8–9.)

Defendants, on the other hand, argue that a federal question is "necessarily raised" in Count I because Count I seeks an order requiring the School District to comply with "applicable" federal procurement regulations, and so construction of federal law is necessary to vindicate Plaintiffs' rights. (Resp. at 9.)

A federal question is "necessarily raised" if "vindication of a right under state law necessarily turns on some construction of federal law." Manning, 772 F.3d at 163 (alteration in original) (quoting Franchise Tax Bd. of State of Calif. v. Constr. Laborers Vacation Trust for S. Calif., 463 U.S. 1, 9 (1983)).

The "'classic example' . . . require[s] a determination of federal law as an essential element of the plaintiff's state law claim." Manning, 772 F.3d at 163 (quoting Grable, 545 U.S. at 312). If a claim is "partially predicated on federal law, federal law would still not be necessarily raised." Manning, 772 F.3d at 164. Therefore, "a claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each." Id. (alteration in original) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1988)); see also Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC, No. 06-4917, 2007 WL 1456204, at *2–3 (D.N.J. May 15, 2007) (discussed in Manning, 772 F.3d at 164) (granting

motion to remand where "[p]laintiffs' state [law] RICO claims allege[d] both federal and state predicate acts," and so plaintiffs could "prevail upon their [state] RICO claims or any of their other state-law claims without any need to prove or establish a violation of federal law").

The Court concludes that no federal question is "necessarily raised" here because Defendants' alleged violation of federal procurement regulations is not a necessary element of Count I.  Though the First Amended Complaint alleges that federal regulations impose "substantive requirements" on Defendants in the procurement process, those requirements are duplicative of those imposed by state law.  Compare 2 C.F.R. § 200.320(d)(1) (requiring RFPs to identify all evaluation factors and their relative importance), with FAC ¶ 31 (the Procurement Manual requires RFPs to define all evaluation factors or criteria in order of importance).  As a result, the Court concludes that it lacks federal question jurisdiction over Count I and need not address the remaining three Grable factors.

### iii.  Supplemental Jurisdiction

As the parties do not dispute that federal question jurisdiction exists over Count II–21PSTEM's First Amendment retaliation claim–the Court may exercise supplemental jurisdiction over Count I if the two claims form part of the same case or controversy.  See 28 U.S.C. § 1367; see also Max v. Republican Comm. of Lancaster Cty., 587 F.3d 198, 199 n.1 (3d Cir. 2009) (noting that the district court had federal question jurisdiction over First Amendment claims).  Claims "form part of the same case or controversy" only if they "derive from a common nucleus of operative facts."  Lyon v. Whisman, 45 F.3d 758, 759–60 (3d Cir. 1995) (citations and internal quotation marks omitted).

Plaintiffs allege that this Court does not have supplemental jurisdiction over Count I because it does not arise out of the same facts as Count II.  (Mot. at 12.)  According to Plaintiffs,

whereas Count I arises out of the School District's practices for preparing and issuing RFPs for professional services and evaluating responses to those RFPs, Count II arises out of the School District's refusal to provide bid protestors with debriefing. (Id.) Further, Plaintiffs argue that this Court should decline to exercise supplemental jurisdiction over Count I under Section 1367(c) because the School District's process for preparing, issuing, and evaluating RFPs at issue substantially predominates over the discrete practice of depriving protestors of their rights as alleged in Count II. (Id. at 12–13.) Plaintiffs aver that unlike Count I, which can only be remedied with "comprehensive injunctive relief," Count II requires "pin point injunctive relief." (Id. at 13.)

Defendants specifically refute Plaintiffs' contention that Counts I and II do not arise from any of the same facts. (Resp. at 10) (citing Mot. at 12.) Defendants note that Count I of the First Amended Complaint includes the allegation that the School District denies debriefings to disappointed proposers who file protests–the same allegation underlying Count II. (Resp. at 11) (citing FAC ¶ 49.) Further, Defendants contend that both claims arise more broadly from Defendants' allegedly flawed RFP process for the procurement of professional services. (Resp. at 11.) As both claims arise from a common nucleus of operative fact–Defendants' RFP process– and RFP-567 is important to each claim, Defendants argue that this Court has supplemental jurisdiction over Count I. (Id. at 12.)

Defendants also dispute Plaintiffs' contention that the state law claim in Count I substantially predominates over the federal claim in Count II. (Id.) (citing Mot. at 13.) Defendants argue that there is no substantial countervailing interest that overrides the efficiencies that would arise from proceeding with both Counts in a single case in a single forum. (Resp. at 12.) Proceeding in separate cases in state in federal court, Defendants contend, would actually increase costs by requiring separate discovery efforts and create a risk of inconsistent findings concerning

Defendants' actions and practices involving debriefings. (Id. at 13.)

Both parties cite this Court's opinion in Mitich, 2012 WL 6209957, in support of their positions. (Mot. at 13; Resp. at 13–14.) In Mitich, the plaintiff brought nine state law claims against defendants, his former employer, arising from his allegedly unlawful termination. The plaintiff also brought two federal claims, alleging that he was improperly denied benefits as a result of his termination in violation of the Employee Retirement Income Security Act ("ERISA"), and that after his termination, the defendants illegally obtained his credit report in violation of the Fair Credit Reporting Act ("FCRA"). Id. at *1. Defendants moved to dismiss, alleging in relevant part that the Court should decline to exercise jurisdiction. Id. This Court dismissed the ERISA claim and declined to exercise supplemental jurisdiction over the FCRA claim because the state law claims substantially predominated over the federal claim. Id. at *9. Not only did the plaintiff devote less than one page of the twenty-two-page complaint to the FCRA claim, but the state law claims also raised issues that were unrelated and uninformed by whether the defendants violated the FCRA. Id. The issues unique to the state law claims were breach of the plaintiffs' employment and benefits contracts with his former employer, tortious interference with those contracts, and tortious interference with the plaintiff's other employment opportunities. Id. As a result, the Court rejected the plaintiff's assertion that the information in his allegedly illegally obtained credit report played some role in conduct giving rise to his state law claims, and concluded that "his FCRA claim is but a federal button on a suit made with state fabric by state tailors." Id.

As Defendants argue, Mitich is distinct from the case at hand. Unlike in Mitich, where the complaint was comprised almost entirely of state law allegations with no discernible relationship to the federal claim, in this case, Counts I and II arise from the School District's alleged failure to adhere to the same Procurement Manual. The RFP process outlined in the Procurement Manual

underlies Count I, and the bid protest procedures also set out in the Procurement Manual form the basis of Count II. As the Third Circuit has instructed, "district courts <u>will</u> exercise supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts,'" which is the case here. <u>Lyon</u>, 45 F.3d at 761 (emphasis added) (quoting <u>Lentino v. Fringe Emp. Plans, Inc.</u>, 611 F.2d 474, 479 (3d Cir. 1979)).

Further, the complaint in <u>Mitich</u> contained only two allegations relevant to the FRCA claim. In this case, Count II incorporates all seventy-five preceding allegations by reference, and the First Amended Complaint makes at least eight allegations specifically concerning the School District's failure to provide 21PSTEM with a requested debriefing. (<u>See</u> FAC ¶¶ 33, 49, 77–82.) Accordingly, the Court concludes that Plaintiffs' state law claims do not substantially predominate over 21PSTEM's First Amendment claim and exercises supplemental jurisdiction over Count I.[5]

### iv. Abstention

Plaintiffs then contend that abstention under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), and <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25 (1959), is warranted here because Count I relies on state law and implicates the state and local practices of the School District, a state political subdivision, in its procurement of professional services. (Mot. at 14–15.) (citing <u>Rucci v. Cranberry Twp., Pa.</u>, 130 F. App'x 572 (3d Cir. 2005); <u>Brown v. Knepp</u>, 412 F. Supp. 2d 446 (E.D. Pa. 2005) (Diamond, J.)).[6]

---

[5] As discussed below, the Court may exercise supplemental jurisdiction because the Court concludes that Taxpayer Plaintiffs have Article III standing to bring Count I in federal court. <u>See</u> <u>DaimlerChrysler Corp.</u>, 547 U.S. 332, 351–52 (2006) ("What we have never done is . . . permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III injury, such as constitutional standing . . . .").

[6] <u>Brown v. Knepp</u> does not address <u>Thibodaux</u> abstention. Further, the Third Circuit has instructed that "<u>Thibodaux</u> is really a variant of the <u>Burford</u> abstention doctrine and has not evolved as a doctrine of its own." <u>Grode v. Mut. Fire, Marine & Inland Ins. Co.</u>, 8 F.3d 953, 957 (3d Cir. 1993). Even if <u>Thibodaux</u> abstention were a separate doctrine, it would not apply to this

The doctrine of abstention, "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Rucci, 130 F. App'x at 576 (quoting Allegheny Cty. v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)). Under the doctrine of Burford abstention,

> [A] federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350 (1989); see also Rucci, 130 F. App'x at 577 (quoting Heritage Farms, Inc. v. Solebury Twp., 671 F.2d 743, 746 (3d Cir. 1982) ("[A] district court may decline to exercise or postpone jurisdiction . . . 'where a difficult question of state law is presented which involves important state policies or administrative concerns.'")).

To determine whether Burford abstention applies, a court must conduct a "two-step analysis." Riley, 45 F.3d at 771. First, a court must determine whether "'timely and adequate state-court review' is available." Empire Abrasive Equip. Co. v. Acceptance Ins. Co., 302 F. Supp. 3d 687, 694 (E.D. Pa. 2018) (Rufe, J.) (quoting Riley, 45 F.3d at 771). Second, if such review is available, "the District Court . . . considers whether the case (1) implicates a regulatory scheme that 'involves a matter of substantial public concern;' (2) 'whether it is the sort of complex,

---

case because Thibodaux is specific to diversity actions. See id. ("[Thibodaux] permits a federal court to abstain in a diversity case where state law is unclear and an important state interest is at stake."); see also Constitution Party of Pa. v. Cortes, 116 F. Supp. 3d 486, 505 n.36 (E.D. Pa. 2015) (Stengel, J.) ("Thibodaux is not implicated because this is not a diversity action involving a novel issue of state law.").

technical regulatory scheme to which the <u>Burford</u> abstention doctrine is usually applied'; and (3) whether federal review of a party's claims would interfere with the state's efforts to establish a maintain a coherent regulatory policy.'" <u>Empire Abrasive Equip. Co.</u>, 302 F. Supp. 3d at 694 (quoting <u>Gov't Emps. Ins. Co. v. Tri Cty. Neurology & Rehab. LLC</u>, 721 F. App'x 118, 121–22 (3d Cir. 2018)). The party invoking the doctrine of abstention bears a "heavy burden of persuasion that abstention is appropriate." <u>Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n</u>, 107 F. Supp. 2d 653, 664 (E.D. Pa. 2000) (Katz, J.), <u>aff'd on other grounds</u>, 273 F.3d 337 (3d Cir. 2001).

Here, the parties do not dispute that "timely and adequate state-court review is available," and so the Court proceeds to the second step in the "two-step analysis." <u>See</u> <u>Riley</u>, 45 F.3d at 771. Plaintiffs' reliance on <u>Rucci v. Cranberry Township</u> and <u>Brown v. Knepp</u> is misplaced because these cases are factually distinct. First, in <u>Rucci</u>, the Third Circuit affirmed the District Court's conclusion that <u>Burford</u> abstention was warranted because the federal claims in the action had been dismissed, and the plaintiff's Pennsylvania Municipal Planning Code and eminent domain claims were of a local, state-law nature. 130 F. App'x at 577. The Third Circuit reasoned that the remaining claims concerned eminent domain and land use regulation, which are distinctly state law matters. <u>Id.</u> at 577–78.

Unlike eminent domain and land use regulation, the procurement of professional services contracts is not a distinctly local, state issue. Though Plaintiffs seek relief against a local school district, the Third Circuit has noted that "[w]hile the state has a paramount interest in the operation of its educational system and courts should not 'intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values,' this policy alone is not a sufficient ground for abstention." <u>King-Smith v. Aaron</u>, 455 F.2d 378, 380 n.3 (3d Cir. 1972) (quoting <u>Epperson v. Arkansas</u>, 393 U.S. 97, 104

(1968) (reversing district court determination that abstention was appropriate where a conflict in provisions of the Pennsylvania Public School Code did not present an unclear question of state law)). Moreover, the Third Circuit has emphasized the "limited scope of the doctrine's application" even where "such specialized and technical areas of particularly local concern as insurance, utility rates and land use" are involved. Felmeister v. Office of Att'y Ethics, 856 F.2d 529, 534 (3d Cir. 1988).

Second, this case is factually distinguishable from Brown v. Knepp, where a former police chief alleged that he was wrongfully terminated in violation of his due process rights, the state's whistleblower law, and the state's police tenure statute. 412 F. Supp. 2d at 448. Both parties agreed that abstention was appropriate but disagreed as to whether the case should be dismissed or stayed. Id. at 449. Judge Diamond also concluded that Burford abstention was appropriate because there was a parallel state court action involving the same parties; the issues raised by the parties in state court directly implicated the ability of municipalities, boroughs, and other government entities to discipline police officers and other public employees; and tenure in public employment is a matter of substantial state or local concern. Id. at 450.

Unlike in Brown, in this case, there is no parallel state court action, and the parties dispute whether abstention is appropriate. Further, as noted above, the procurement practices of a school district are not a matter of "substantial concern," unlike tenure in public employment. See id. at 450 (quoting Riley, 45 F.3d at 771).

In sum, as to abstention, Plaintiffs have failed to meet their burden of showing that the procurement practices of the School District or the provisions of the Pennsylvania Public School Code at issue in this case implicate a purely local and substantial public policy concern. Further, a decision in this Court would not disrupt the state's efforts to establish a coherent policy with

respect to the School District's procurement policies, as Plaintiffs note that there are federal regulations governing the force and effect of the Procurement Manual. See Bell Atl.-Pa., Inc., 107 F. Supp. 2d at 666 (concluding that Burford abstention was not appropriate in part because of the Telecommunications Act's "clear intent to inject certain federal standards and federal oversight into state regulation of local services"). Accordingly, the Court concludes that Burford abstention is not warranted, as the regulation of procurement of professional service contracts in the school system does not share the features of regulatory schemes to which Burford abstention applies.

### v. Article III Standing

Finally, Plaintiffs argue that Count I must be remanded because Taxpayer Plaintiffs lack Article III standing to bring this claim in federal court. (Mot. at 15–16.) Plaintiffs contend that based on Third Circuit precedent, municipal taxpayers lack Article III standing to challenge an unlawful process that leads to the expenditure of municipal funds on a good or service that is not per se unlawful. (Id. at 16) (citing Nichols v. City of Rehoboth Beach, 836 F.3d 275 (3d Cir. 2016)). Because the professional services Defendants seek to procure are not per se unlawful, Plaintiffs aver, they lack standing to bring Count I in federal court. (Mot. at 16.)

Defendants contend in response that Taxpayer Plaintiffs' purported lack of Article III standing is a basis for dismissal, not remand. (Resp. at 17.)[7] Defendants also note that Plaintiffs do not contend that 21PSTEM lacks standing to pursue Count I and argue that severing only Taxpayer Plaintiffs' allegations in Count I from 21PSTEM's would create substantial inefficiencies and risks of inconsistent adjudications in state and federal forums. (Id. at 17–18.)

Under Article III of the United States Constitution, this Court's subject matter jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2; Lujan v. Defs. of Wildlife, 504

---

[7] Defendants do not cite any cases for this proposition.

U.S. 555, 560 (1992).  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."  Kamal v. J. Crew Grp., Inc., --- F.3d ---, 2019 WL 1087350, at *4 (3d Cir. Mar. 8, 2019) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).  The doctrine of standing "'limits the category of litigants empowered to maintain a lawsuit in federal court' and has 'developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.'"  Kamal, 2019 WL 1087350, at *4 (quoting Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016)).  There are three elements necessary to establish Article III standing:

> First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560–61 (internal quotation marks and citations omitted).

In this case, Taxpayer Plaintiffs claim that they lack standing based on their status as municipal taxpayers.[8]  The Supreme Court has recognized that a municipal taxpayer may have standing to litigate "a good-faith pocketbook action."  ACLU-NJ v. Twp. of Wall, 246 F.3d 258, 262 (3d Cir. 2001) (citing Doremus v. Bd. of Educ. of Hawthorne, 342 U.S. 429, 434 (1952)).  To challenge a municipal expenditure, a municipal taxpayer must demonstrate "(1) that he pays taxes

---

[8] Though the Third Circuit has held in the past that municipal taxpayer standing constitutes prudential standing, more recently, the Third Circuit has considered municipal taxpayer standing to be an issue of Article III standing.  Compare Warnock v. Nat'l Football League, 356 F. Supp. 2d 535, 540 (W.D. Pa.), aff'd, 154 F. App'x 291 (3d Cir. 2005) (citing Rocks v. City of Phila., 868 F.2d 644, 648 (3d Cir. 1989) ("[T]he Third Circuit views the determination of whether a municipal taxpayer has a sufficient stake in the proceedings to invoke the court's jurisdiction as a prudential standing consideration.")), with Nichols, 836 F.3d at 280–81 (addressing municipal taxpayer standing as a form of Article III standing).

to the municipal entity, and (2) that more than a de minimis amount of tax revenue has been expended on the challenged practice itself." Nichols, 836 F.2d at 281 (citing ACLU-NJ, 246 F.3d at 263–64). An "inherent requirement" of municipal taxpayer standing is that "the municipality has actually expended funds on the allegedly illegal elements of the disputed practice." Nichols, 836 F.3d at 282.

As an initial matter, Defendants' argument regarding the appropriateness of remand is unavailing. Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The Third Circuit has instructed that where Article III standing is absent, and so a district court lacks subject matter jurisdiction, Section 1447(c) requires district courts to remand. See Bromwell v. Mich. Mut. Ins. Co., 115 F.3d 208, 213–14 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from state court, it must remand and not dismiss on the ground of futility."); Wheeler v. Travelers Ins. Co., 22 F.3d 534, 540 (3d Cir. 1994) (citations and internal quotation marks omitted omitted) ("[A] determination that there is no standing does not extinguish a removed state court case. Rather, federal law only requires . . . remand . . . to state court."); see also Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 269 (3d Cir. 2016) (noting that "Article III standing is essential to federal subject matter jurisdiction"). Though lack of Article III standing may be a basis for dismissal, it may also be addressed on remand. See Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.")).

Moreover, judges within the Third Circuit have concluded that remand is the proper remedy when a plaintiff lacks Article III standing. See, e.g., Katz v. Six Flags Great Adventure,

LLC, No. 18-116 (FLW) (DEA), 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018) (granting the plaintiff's motion to remand where Article III standing was lacking); see also Langer v. Capital One Auto Fin., No. 16-6130, 2019 WL 296620, at *2–3, *5 (E.D. Pa. Jan. 23, 2019) (Bartle, J.) (considering whether the plaintiffs lacked Article III standing in ruling on the plaintiffs' motion to remand).

Here, Taxpayer Plaintiffs have alleged that they pay property taxes to the City of Philadelphia, the municipality at issue. (FAC ¶ 8.) However, Plaintiffs contend that under Nichols, they lack Article III standing because it is not per se unlawful for the School District to purchase professional services. (Mot. at 16.)

Taxpayer Plaintiffs misconstrue Nichols. In Nichols, the Third Circuit held that a municipal taxpayer lacked standing to challenge a special election to approve bonds because the plaintiff was not challenging the election itself, but rather the constitutionality of the voting procedures at the special election. Id. at 283. The Third Circuit did state that "[b]ecause the [funds at issue] [were] not spent on an illegal practice, [the plaintiff] [could not] assert municipal taxpayer standing to challenge the expenditure." Id. at 282. Taxpayer Plaintiffs misinterpret this statement. The Third Circuit did not hold that the practice on which municipal taxpayer dollars are spent must be illegal for municipal taxpayer standing. Rather, the Third Circuit held that a plaintiff must challenge the practice on which municipal taxpayer dollars are spent as illegal to have municipal taxpayer standing. Id. at 281, 283. As the plaintiff in Nichols was challenging the legality of the special election, not the expenditure of municipal tax dollars, the plaintiff lacked standing. Id. at 281, 284.

Unlike in Nichols, where the plaintiff was not challenging the expenditure of municipal funds, here, Taxpayer Plaintiffs are challenging the use of municipal taxpayer dollars to procure

professional services at a higher cost than necessary. The Third Circuit noted in <u>Nichols</u> that "[t]he only expenditure that [the plaintiff] [could] challenge [was] the cost of holding the special election[.] <u>Id.</u> at 282. Here, Taxpayer Plaintiffs are contesting the cost of procuring professional services which, under <u>Nichols</u>, Taxpayer Plaintiffs have standing to challenge.

Further, Taxpayer Plaintiffs have adequately alleged more than a de minimis drain on tax revenues due to the challenged procurement process. The First Amended Complaint sufficiently alleges that the School District's procurement process "has cost and will continue to cost taxpayers millions of dollars more per year than is necessary." (FAC ¶ 66); <u>cf.</u> <u>Doremus</u>, 342 U.S. at 433 (holding that the plaintiffs lacked standing as taxpayers because they failed to allege "what kind of taxes [they] paid" or that the challenged practice "increase[d] any tax they [did] pay or that as taxpayers they are, will, or possibly can be out of pocket because of [the practice]"). In short, Taxpayer Plaintiffs have sufficiently alleged that their tax revenues were expended, and will continue to be expended, on the procurement of professional services, the practice that Taxpayer Plaintiffs are challenging. Therefore, the Court concludes that Taxpayer Plaintiffs have Article III standing to bring Count I in federal court.

## VI.     Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand will be denied. An appropriate Order follows.

O:\CIVIL 18\18-3982 Weathers v School District of Phila\18cv3982 Memo re Motion to Sever and Remand.docx