**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN M. WEATHERS, et al.,**<br><br>        **v.**<br><br>**THE SCHOOL DISTRICT OF PHILADELPHIA, et al.** | **CIVIL ACTION**<br><br>**NO. 18-3982** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                    **April 8, 2019**

### I.    Introduction

In this case, Plaintiffs John Weathers, Richard DiDio, and David Taylor (together, "Taxpayer Plaintiffs") as well as Plaintiff 21st Century Partnership for STEM Education ("21PSTEM") allege that the request-for-proposal ("RFP") process of Defendants School District of Philadelphia and the School Reform Commission[1] (together, the "School District" or "Defendants") violates state and federal procurement regulations. Plaintiff 21PSTEM also alleges that Defendants' refusal to provide it with a debriefing after it filed a bid protest violated its rights under the First and Fourteenth Amendments of the United States Constitution and comparable sections of the Pennsylvania Constitution. The Second Amended Complaint (ECF 6-1, "SAC") alleges four Counts:

1.  **Count I**: 21PSTEM seeks declaratory and injunctive relief to enjoin Defendants from continuing to violate Pennsylvania common law, binding School Reform Commission policies, the School District's Procurement Manual, the School District's RFPs, and grant regulations when procuring professional services.

---

[1] Defendants contend that the School Reform Commission ceased to exist as of June 30, 2018 and that a Board of Education now governs the School District in its place. (ECF 10 at 3 n.1.) The First Amended Complaint, filed on August 28, 2018 (ECF 1, Notice of Removal Ex. A, "FAC"), and the Second Amended Complaint, filed on October 3, 2018, name the School Reform Commission as a Defendant. The Court dismisses all claims against the School Reform Commission. The Court suggests that the parties stipulate on the issue or the Court will grant Plaintiff leave to amend to clarify the correct Defendant, if necessary.

2. **Count II**: Taxpayer Plaintiffs seek declaratory and injunctive relief to enjoin Defendants from continuing to violate Pennsylvania common law, binding School Reform Commission policies, the School District's Procurement Manual, the School District's RFPs, and grant regulations when procuring professional services. Count II is pleaded in the alternative to Count I if the Court determines that 21PSTEM lacks standing to bring Count I.

3. **Count III**: 21PSTEM alleges that Defendants' refusal to provide 21PSTEM with a requested debriefing after it filed a bid protest amounts to unlawful retaliation in violation of the First and Fourteenth Amendments to the United States Constitution, and seeks declaratory and injunctive relief, compensatory or nominal damages, and costs and expenses.

4. **Count IV**: 21PSTEM alleges that Defendants' refusal to provide 21PSTEM with a requested debriefing violates Article I, Sections 20 and 26 of the Pennsylvania Constitution, and seeks only declaratory and injunctive relief.

Presently before this Court is Defendant School District's Motion to Dismiss all Counts of the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Motion is granted in part and denied in part.

## II. Factual Background

Taking Plaintiffs' allegations as true, the factual background is as follows. Taxpayer Plaintiffs are residents of Philadelphia, Pennsylvania who own property situated within the School District for which they have paid real estate taxes to the District and the City of Philadelphia. (SAC ¶¶ 4–6.) They also pay taxes to the Commonwealth of Pennsylvania, which provides funding support to the School District and the School Reform Commission. (Id.) Dr. Weathers and Mr. Taylor are employed by Plaintiff 21PSTEM: Dr. Weathers as a Senior Researcher and Mr. Taylor as a Senior Web Developer. (Id. ¶¶ 4, 6.) Plaintiff 21PSTEM is a non-profit organization that offers consultative services to improve the performance of teachers, school principals, and other supervisors. (Id. ¶¶ 7–8.) On several occasions, 21PSTEM has responded to RFPs for professional services issued by the School District, including RFPs covering services that would be funded at least in part by federal grants, and intends to do so in the future. (Id. at ¶ 9.) Defendant

School District is a public school district and political subdivision of the Commonwealth of Pennsylvania and is governed by Defendant School Reform Commission.  (Id. at ¶¶ 11–12.)

Plaintiffs allege that the School District's procurement practices for professional services are governed by (1) "judicially enforceable standards for procurement that have been developed in Pennsylvania case law"; (2) policies enacted by the School District's Board of Education or its predecessor, the School Reform Commission; (3) the School District's Procurement Manual; (4) the School District's RFPs; and (5) federal procurement regulations, when a procurement is funded at least in part by federal money.  (Id. ¶ 13.)

Pennsylvania's Public School Code imposes competitive bidding requirements for construction contracts but does not "directly impose" such requirements for professional services contracts.  (Id. ¶ 14.)  However, the School Code authorizes the School District to "adopt reasonable regulations for its government and control" and "such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs," which includes rules and regulations pertaining to procurement.  (Id. ¶ 15) (citing 24 P.S. § 5-510.)[2]

Pursuant to its authority under the School Code, the School Reform Commission adopted School District Policy No. 610.  (SAC ¶¶ 15, 17.)  Policy No. 610 provides that the School Reform Commission "shall obtain competitive bids and price quotations for products and services where such bids or quotations are required by law or may result in monetary savings to the school district."  (Id. ¶ 17; id. Ex. 1.)[3]  Policy No. 610 also requires the School District's Office of

_____

[2] The statute cited does not refer to procurement of professional services, as Plaintiffs allege.  Rather, the statute empowers the "board of school directors . . . to organize school safety patrols[.]"

[3] Policy No. 610 cites four statutes as "legal references."  The only statute cited that addresses procurement, 24 P.S. § 7-751, requires the School District to employ a competitive bidding process when awarding construction contracts.  (See § 7-751(a.2) ("All construction, reconstruction, repairs, maintenance, or work of any nature, including the introduction of

Procurement Services to "maintain a Policies and Procedures Manual to identify the district's process for obtaining competitive bids and price quotations as required by applicable law." (Id. ¶ 18.) The School Reform Commission adopted the December 2017 amendments to Policy No. 610. (Id. ¶ 19; id. Ex. 2.)

Under the delegation of authority provided in Policy No. 610, the Office of Procurement Services maintains a Policies and Procedures Manual ("Procurement Manual"), which Plaintiffs allege has the force of law because it is maintained pursuant to Policy No. 610, a "validly enacted School District regulation." (Id. ¶ 21.) However, in the School District's day-to-day operations, it takes the position that the Procurement Manual "does not have the force of law[.]" (Id. ¶ 45; id. Ex. 6.)

The Procurement Manual states that the purpose of a competitive procurement process "is to ensure that bid solicitations are awarded on the basis of a competitive process designed to select qualified vendors to provide goods and services." (Id. ¶ 22; id. Ex. 3.) Pursuant to the Procurement Manual, the RFP process is "generally used to select a vendor for a professional or consulting service." (Id. ¶ 25.) When the School District procures such services through an RFP, the Procurement Manual states that the RFP process described in the Manual "**MUST** be followed" and that "[c]ompliance with this process and file management are **CRITICAL** to defend an evaluation decision." (Id.) The Procurement Manual also provides that "[t]here must be a common

_____

plumbing, heating and ventilating, or light systems, upon any school building or upon any school property . . . shall be done under separate contracts entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids.")) The Pennsylvania Supreme Court has interpreted this statute to limit the competitive bidding requirement to "contracts for physical construction labor only, . . . because the 'work of any nature' phrase . . . is immediately modified by examples of physical labor." Malloy v. Boyertown Area Sch. Bd., 657 A.2d 915, 920 n.4 (Pa. 1995). Accordingly, this statute does not require a competitive bidding process for professional services, such as 21PSTEM's services.

4

standard throughout the competitive RFP process," which requires "an understanding on the part of all competitors of the basis upon which the award of contract will be made." (Id. ¶ 26.) The The Procurement Manual explains that this "common standard" on which bids and proposals are based is central to competitive procurement, and that the purpose of bidding requirements is to invite competition and secure the best work at the lowest price practicable. (Id. ¶¶ 23–24.)

Similarly, "[a]ll factors or criteria that will be used to evaluate proposals must be clearly set forth in the RFP," and "[t]he RFP shall clearly define all evaluation factors or criteria in order of importance, including price." (Id. ¶ 27.) The Procurement Manual requires that the School District's Evaluation Committee conduct the RFP evaluation process in a "fair and objective manner," which means that all proposals must be evaluated "in accordance with the specific criteria identified in the RFP." (Id. ¶ 28.) The Evaluation Committee may not consider factors or criteria that are not specified in the RFPs. (Id.)

When a procurement by the School District is paid for at least in part by federal grant money, School Reform Commission Policy No. 1000 directs and requires the School District to comport with "federal Uniform Grant Guidance." (Id. ¶¶ 33–34; id. Ex. 4.) Consistent with Policy No. 1000, School District Policy No. GP1600 requires that, when procuring goods or services with federal grants, the School District must comply with its Procurement Manual as well as federal grant regulations, if the grant regulations are more restrictive than the Procurement Manual. (Id. ¶¶ 36–37; id. Ex. 5.) The federal grant regulations require the School District to use "its own documented procurement procedures" outlined in the Procurement Manual and mandates that RFPs identify all evaluation factors and their relative importance. (Id. ¶¶ 38–39) (citing 2 C.F.R. §§ 200.318, 200.320(d)(1)).)

On November 9, 2017, the School District, through its Office of Procurement Services,

issued RFP-567, which solicited proposals for a professional services contract involving job training and professional development support for first-and second-year principals. (SAC ¶ 51; id. Ex. 7.) Federal funds would be used to pay for a portion of the costs of the new principal coaching requested. (Id. ¶ 52.) RFP-567 listed a non-exhaustive list of evaluation criteria, including "Project Cost," but did not provide any information about the relative weight attributed to each criterion. (Id. ¶¶ 53–54.) In the RFP, the School District reserved the right to "supplement, amend or otherwise modify this RFP at any time prior to the selection of a respondent" and to "reject any or all proposals or any part of any proposal submitted in response to this RFP, and to waive any defect or technicality[.]" (Id. Ex. 8 at 9.) In an Addendum to RFP-567, the School District stated that RFP-567 was a "proposal[] based on the District seeking the most competitive pricing." (Id. ¶¶ 55–56; id. Ex. 8.)

When the School District evaluated responses to RFP-567, it made pricing the least important factor in its evaluation matrix, and it applied the pricing factor in a way that did not actually seek competitive pricing. (Id. ¶¶ 57–58.) The winning respondent submitted a proposal at the maximum allowable budget of $4 million, but it received the same or higher pricing scores as respondents who submitted proposals for less than $3 million. (Id. ¶ 58.) The evaluation matrix completed by the District did not have eight scoring sections corresponding to the evaluation criteria listed in the RFP. (Id. ¶¶ 60–61.)

Pursuant to the Procurement Manual, an unsuccessful bidder "shall be debriefed and furnished the basis for the selection and award of the contract." (Id. ¶ 67.) These debriefings "shall include" the provision of "Evaluation Information," which refers to copies of the evaluator's scoresheets and the overall evaluated cost and technical rating of the winning bidder. (Id. ¶¶ 67–68.) The School District's actual practice is to refuse to provide a debriefing to any RFP

respondent that files a bid protest.  (Id. ¶ 69.)

After 21PSTEM was not awarded a contract for RFP-567, 21PSTEM requested a debriefing and filed a bid protest.  (SAC ¶ 92.)  21PSTEM also requested Evaluation Information pursuant to the Commonwealth Procurement Code and the Commonwealth Procurement Handbook, including copies of its evaluation score sheets, the overall evaluated cost and technical rating of the winning contractor, the overall ranking of vendors, and a summary of the rationale for the award.  (Id. Ex. 9.)  The School District rejected 21PSTEM's request for documents, contending that Pennsylvania's Right-to-Know Law does not require it to provide disappointed bidders with the Evaluation Information that the Procurement Manual states shall be provided in a debriefing.  (Id. ¶ 70; id. Ex. 9.)  The School District refused to provide a debriefing to 21PSTEM while its bid protest with respect to RFP-567 was pending.  (Id. ¶¶ 71, 93.)

### III.    Procedural History

On May 30, 2018, Taxpayer Plaintiff's filed the Original Complaint against Defendants School District, School Reform Commission, and The New Teacher Project, which was awarded the services contract, in the Court of Common Pleas of Philadelphia County (ECF 1).  The Original Complaint alleged that Defendants School District and School Reform Commission unlawfully conducted the RFP process and sought a preliminary injunction to enjoin the enforcement of the contract awarded to the New Teacher Project.  (Id. ¶¶ 15–43.)  Taxpayer Plaintiffs withdrew their request for preliminary injunction with respect to the specific contract, and Defendants School District and School Reform Commission filed preliminary objections to the Original Complaint on July 17, 2018.[4]  (ECF 7 at 2; ECF 10 at 2; ECF 1 at 3, ¶ 3.)

On August 28, 2018, Plaintiffs filed the First Amended Complaint, which added 21PSTEM

---

[4] These documents do not appear on the federal docket.

as a Plaintiff and voluntarily dismissed The New Teacher Project as a Defendant. (ECF l Ex. A.) On September 14, 2018, Defendants filed a Notice of Removal in this Court, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331 (ECF 1). Defendants contend in the Notice of Removal that this Court has jurisdiction because the First Amended Complaint added allegations that Defendants' practices in the procurement of professional services violate federal procurement regulations and that Defendants violated 21PSTEM's First Amendment rights. (Id. at 3, ¶¶ 6–7.) On September 21, 2018, Defendants filed a Motion to Dismiss the First Amended Complaint for failure to state a claim, alleging that Count I should be dismissed because Taxpayer Plaintiffs failed to challenge the award of a specific contract, and 21PSTEM, a disappointed bidder, has no right to challenge the School District's procurement practices under Pennsylvania law (ECF 4, "MTD FAC"). Defendants argued that Count II should be dismissed as speculative (Id.)

Plaintiffs filed a Motion for Leave to Amend their Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) on October 3, 2018, attaching the Second Amended Complaint. (ECF 6-1). On October 5, 2018, Plaintiffs filed a Motion to Sever and Remand (ECF 7). The Motion alleged that the procurement claim–Count I of the First Amended Complaint–should be severed and remanded because the principal relief Plaintiffs sought was an injunction requiring the School District to follow state law. (Id. at 1.) This Court issued an Order on October 10, 2018, stating that Plaintiffs' obligation to respond to Defendants' Motion to Dismiss, and Defendants' obligation to respond to Plaintiffs' Motion for Leave to Amend, were stayed pending a ruling on the Motion to Sever and Remand (ECF 8). Defendants filed a Response to the Motion to Sever and Remand on October 25, 2018 (ECF 10), and Plaintiffs filed a Reply on November 1, 2018 (ECF 11).

Following a December 19, 2018 hearing on the Motion to Sever and Remand, the Court denied the Motion to Dismiss the First Amended Complaint as moot (ECF 13). The same Order

stated that the Court was inclined to confine its consideration of the issue of remand to the First Amended Complaint, but that the Court was inclined to permit Plaintiffs to amend the First Amended Complaint and make the Proposed Second Amended Complaint the operative complaint for the Court's consideration of the issue of standing. (Id. ¶¶ 1–3.) The Court also ordered Defendants to file a renewed Motion to Dismiss the Second Amended Complaint by January 15, 2019, Plaintiffs to file a Response by January 29, 2019, and Defendants to file a Reply by February 12, 2019. (Id. ¶ 4.) On March 19, the Court denied the Motion to Sever and Remand (ECF 23, 24).[5] Pursuant to the Court's December 19, 2018 Order, Defendant School District filed a renewed Motion to Dismiss (ECF 17, "MTD SAC"), Plaintiffs filed a Response in opposition (ECF 19, "Resp."), and Defendant School District filed a Reply (ECF 21, "Rep.").

## IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also

_____

[5] The Court's opinion is available at 2019 WL 1259496 (E.D. Pa. Mar. 19, 2019) (Baylson, J.).

Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions[6]

Defendant School District contends that Counts I and II should be dismissed because Plaintiffs fail to challenge the award of a specific contract, as required under Pennsylvania law. (MTD SAC at 4.) The School District also argues that the laws Plaintiffs cite do not support their claims. (MTD FAC at 6–7.)[7] Specifically, the School District argues that the Pennsylvania Public School Code does not govern the School District's contracting practices for professional services. (Id. at 7–8.)

The School District argues that Counts III and IV must be dismissed because the claims are speculative, and because the School District's failure to provide 21PSTEM with a requested

---

[6] Both parties raise arguments concerning whether Counts I and II of the SAC should be severed and remanded to state court. After the parties filed their briefs, the Court denied the Motion to Sever and Remand Count I of the FAC. As the parties recognize, Count I of the FAC is nearly identical to Counts I and II of the SAC. Further, there is no dispute that this Court has original jurisdiction over Count III and supplemental jurisdiction over Count IV. See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995) (quoting Lentino v. Fringe Emp. Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979) ("[D]istrict courts will exercise supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts[.]'")). Therefore, the Court need not address the parties' remand arguments in ruling on the Motion to Dismiss.

[7] Although the Motion to Dismiss the FAC was denied as moot, the School District references the Motion to Dismiss the FAC in the pending Motion. The Court considers the School District's arguments that apply to the instant Motion.

debriefing while its bid protest was pending would not deter persons of ordinary firmness from protesting a bid award, as required to support a retaliation claim. (MTD SAC at 4, 9.)

In the Response, Plaintiffs contend that Count I should not be dismissed because 21PSTEM may seek prospective relief barring unlawful practices in future procurements. (Resp. at 8.) Plaintiffs argue that Count II, an alternative claim to Count I, should not be dismissed because Taxpayer Plaintiffs may seek prospective relief if 21PSTEM cannot. (Id. at 14–17.) Regarding the remaining Counts, Plaintiffs contend that the School District waived any arguments with respects to Counts III and IV because the District does not make any arguments regarding Count IV, nor does the District "even address any of the new allegations" relevant to Count III. (Id. at 17.) If the Court addresses the merits of Count III, Plaintiffs contend that Count III should not be dismissed because 21PSTEM has adequately alleged that denying debriefings would change the behavior of people or ordinary firmness. (Id. at 18.) Further, Plaintiffs argue that because the SAC added a request for compensatory relief to Count III, it can no longer be deemed speculative. (Id. at 19–20.) Plaintiffs make no arguments regarding why Count IV should not be dismissed. (See id. at 20.)

The School District reiterates in the Reply that neither 21PSTEM, an unsuccessful bidder, nor Taxpayer Plaintiffs have standing under state law to challenge the contracting policies or practices of the School District, and so Counts I and II should be dismissed. (Rep. at 2.) The School District adds that Plaintiffs' reliance on the Commonwealth Procurement Code is misplaced because this Code only applies to state agencies, not local school districts. (Id. at 1.) The School District also notes that Plaintiffs fail to cite any authority for the proposition that a school district's regulations, even those that are formally adopted by its governing body, are judicially enforceable in an action brought by taxpayers or an unsuccessful bidder. (Id. at 3.)

Regarding Count III, the School District argues that Plaintiffs have failed to allege that the School District's allegedly retaliatory conduct of denying 21PSTEM a debriefing was sufficiently severe to deter a plaintiff of ordinary firmness from exercising its rights. (Id. at 4.) The School District disputes that it waived any arguments with respect to Count IV, arguing that its arguments regarding dismissal of Count III also apply to Count IV. (Id. at 5–7.)

## B. Analysis

### i. 21PSTEM's Procurement Claim (Count I)

#### 1. Article III Standing

Plaintiffs plead Count II as an alternative to Count I only if the Court determines that 21PSTEM lacks "standing" to pursue Count I. (FAC ¶ 83.) Plaintiffs do not distinguish between Article III standing and non-jurisdictional "standing" under state law.[8] Therefore, the Court first addresses whether 21PSTEM has Article III standing to bring Count I in this Court before addressing whether the FAC adequately states a claim under Counts I or II.

Defendants contend that 21PSTEM has Article III standing to bring Count I, but that 21PSTEM fails to state a claim under state law. (MTD SAC at 4.) Plaintiffs, on the other hand, argue that Count I should not be dismissed because 21PSTEM may seek prospective injunctive

---

[8] The School District contends that Plaintiffs confuse Article III standing with non-jurisdictional "standing," which is the ability to seek relief under state law. (MTD SAC at 6–7.) The Supreme Court has recognized that Article III standing is a distinct inquiry from the ability to state a claim. See Bond v. United States, 564 U.S. 211, 219 (2011) ("[T]he question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute, . . . and conflation of the two concepts can cause confusion."); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 349 n.15 (3d Cir. 2011) (Jordan, J., dissenting) ("Whether a party has standing under Article III is a distinct inquiry from whether the party may assert a cause of action under state or federal law."). For purposes of the instant Motion, the Court distinguishes between the issues of Article III standing and whether Plaintiffs have stated a claim under state law, following the Third Circuit. See Indep. Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1176–80 (3d Cir. 1997) (distinguishing between a disappointed bidder's Article III standing and a low bidder's right to relief under Pennsylvania's competitive bidding statutes).

and declaratory relief barring the School District's unlawful practices in future procurements. (Resp. at 14–17.)

As addressed in the Court's opinion denying the Motion to Sever and Remand, Article III of the United States Constitution limits this Court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 110 (3d Cir. 2019) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).

A plaintiff demonstrates Article III standing by establishing "(1) [an] injury in fact . . . that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] . . . that the injury will be redressed by a favorable decision." McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) (citation and internal quotation marks omitted); see also Lujan, 504 U.S. at 560–61; Kamal, 918 F.2d at 110. "When . . . prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." McNair, 627 F.3d at 223 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

Here, 21PSTEM has adequately pleaded the first requirement of standing– that it is "likely to suffer future injury"–because 21PSTEM alleges that the School District's unlawful procurement practices "have injured and will continue to injure 21PSTEM . . . by depriving [it] of the fair and open process to which [it] ha[s] been promised and to which [it] [is] entitled under applicable law." (SAC ¶ 77); see also Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 248 (3d Cir. 2014) (citation and internal quotation marks omitted) ("In the context of a *motion to dismiss*, we have held that the [i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement,

while not precisely defined, are very generous, requiring only that [the] claimant allege [ ] some specific, identifiable trifle of injury.").

21PSTEM has also demonstrated that it meets the second requirement of standing, as 21PSTEM has alleged a "causal connection" between the claimed injury (denial of a requested debriefing and a "fair and open process") and the challenged conduct (the School District's failure to provide debriefings to bid protestors and reveal how RFPs are evaluated). Finally, 21PSTEM has adequately alleged the third element of standing–redressability–by alleging that its injury can likely be remedied through a declaration requiring the School District to provide transparency in their evaluation of RFPs and/or an injunction against the School District's failure to do so in the future. In sum, the FAC alleges sufficient facts to confer 21PSTEM with Article III standing to bring Count I, and so the Court proceeds to consider whether 21PSTEM has stated a claim.

## 2. Merits

The School District contends that although 21PSTEM has Article III standing to bring Count I in this Court, 21PSTEM fails to state a claim for which relief can be granted under state law. (MTD SAC at 6–8.) The School District seeks to dismiss Count I because 21PSTEM, a disappointed RFP proposer, has no right to challenge the School District's process for awarding contracts under Pennsylvania law. (MTD SAC at 8) (citing R.S. Noonan, Inc. v. Sch. Dist. of City of York, 162 A.2d 623, 625 (Pa. 1960)).)

The Pennsylvania Supreme Court has held that "a disappointed bidder . . . sustain[s] no personal injury which entitles him to redress in court." R.S. Noonan, Inc., 162 A.2d at 625; see also Conti Enters., Inc. v. SEPTA, No. Civ.A. 03-5345, 2003 WL 22594327, at *3 (E.D. Pa. Oct. 14, 2003) (O'Neill, J.) (quoting Black Ash Servs., Inc. v. DuBois Area Sch. Dist., 764 A.2d 672, 674 (Pa. Commw. Ct. 2000) ("Disappointed bidders ordinarily do not have standing in

Pennsylvania to enjoin a public contract because they have 'no property interest and ha[ve] suffered no injury that would entitle [them] to redress.'")).

In R.S. Noonan, the defendant school district advertised for competitive sealed bids to build a new school building, and the plaintiff was the lowest bidder. 162 A.2d at 624. Rather than award the plaintiff the contract, the school district rejected all submitted bids. Id. The plaintiff sought damages and an injunction requiring the school district to award the contract to the plaintiff, alleging that there was no justification for rejecting its bid and ordering new bids. Id. The plaintiff relied on 24 P.S. § 7–751(a), which required the school district to award contracts to the lowest responsible bidder. Id. at 624. The Pennsylvania Supreme Court held that the plaintiff was not entitled to challenge the conduct of the defendant because it was not a taxpayer, and only taxpayers had the right to protest the defendant's alleged misconduct under the competitive bidding statute. Id. at 624–26.

Plaintiffs seek to distinguish R.S. Noonan by arguing that although disappointed bidders may not enjoin or challenge the award of a specific contract, a disappointed bidder, such as 21PSTEM, may seek prospective relief barring the use of unlawful procurement practices in the future. (Resp. at 9–10.) Plaintiffs contend that Brayman Construction Corp. v. Dep't of Transportation, 13 A.3d 925 (Pa. 2011), and Pennsylvania Associated Builders & Contractors, Inc. v. Commonwealth Dep't of General Services, 932 A.2d 1271 (Pa. 2007), establish this "clear rule." (Resp. at 9–10.) Plaintiffs' reliance on these cases is misplaced because they are factually distinct and do not support Plaintiffs' position.

First, in Brayman, the Pennsylvania Supreme Court affirmed the decision of the Commonwealth Court, which enjoined the Pennsylvania Department of Transportation ("PennDOT") from seeking and evaluating design-build contracts using any other "innovative

method" other than competitive bidding. 13 A.3d at 931 (citation and internal quotation marks omitted). The parties disputed whether the plaintiff, which had not submitted a bid for the relevant construction contract, was a "prospective bidder" or "prospective contractor" whose exclusive remedy was an administrative bid protest under the Commonwealth Procurement Code. 13 A.3d at 929–31. The court did not analyze the issue of standing, and only noted that any challenges to the plaintiff's taxpayer standing had been waived. Id. at 930 n.5, 931 n.8. The court did not address whether a bidder has standing under state law to challenge a procurement practice.[9]

Second, Pennsylvania Associated Builders & Contractors also fails to support Plaintiffs' argument. In Pennsylvania Associated Builders & Contractors, the plaintiff, an association of general contractors, sought an injunction to enjoin the Department of General Services from using a competitive sealed proposal process, the RFP process, for future construction projects. 932 A.2d at 1273. On appeal, the Pennsylvania Supreme Court was tasked with interpreting the applicable provisions of the Procurement Code as applied to construction contracts. Id. Based on the court's construction of state law, the court reversed the Commonwealth Court's decision granting the association's partial motion for summary judgment and ordering an injunction. Id.

Plaintiffs argue that the Commonwealth Court rejected the Department's argument that the plaintiff's claim should be dismissed for lack of standing. (See Resp. at 10.) However, the

---

[9] The School District seeks to further distinguish Brayman by arguing that it specifically concerned the Procurement Code's competitive bidding requirement on construction projects implemented by a state agency. (Rep. at 1.) The School District contends that the Procurement Code does not apply to the School District, which is a political subdivision, not a state agency. (Id.); see also Highly v. Dep't of Transp., 195 A.3d 1078, 1086 (Pa. Commw. Ct. 2018) (noting that a contract with the Department of General Services, a Commonwealth agency, was governed by the Procurement Code, unlike a contract with a political subdivision). The Court notes that the School District's Procurement Manual cites the Procurement Code as the legal bases for some of its rules. (See, e.g., SAC Ex. 3 at 39) (citing Commonwealth Procurement Code, 62 Pa.C.S.A.§§ 513(e), (f), (g)).) However, the Court does not draw any conclusions regarding the applicability of the Procurement Code to the School District.

Commonwealth Court did not address whether the association lacked standing, and instead only noted that the Department had raised this argument in a preliminary objection, which the court denied. Pa. Associated Builders & Contractors, Inc. v. Commonwealth Dep't of Gen. Servs., 899 A.2d 389, 391 (Pa. Commw. Ct. 2006), rev'd, Pa. Associated Builders & Contractors, Inc., 932 A.2d 1271.

Contrary to Plaintiffs' contention, these cases do not establish a "clear rule" that bidders may seek prospective injunctive relief barring the use of an unlawful practice in future procurements. These cases involved the Procurement Code's requirement that construction contracts be procured through competitive bidding, which is not at issue in this case.[10] Neither case addresses whether a disappointed bidder has standing to challenge a procurement practice under state law. Nor is the Court aware of any judicial decisions binding on this Court that support Plaintiffs' theory.

Even if competitive bidding statutes were applicable, the Third Circuit has explained, when applying Pennsylvania state law, that "[s]tatutes requiring the award of public contracts to the lowest bidder exist solely for the benefit of taxpayers, and only taxpayers suffer a legally cognizable industry from a violation of the statute that entitles them to bring suit." Indep. Enters. Inc., 103 F.3d at 1178; see also ARA Servs., Inc. v. Sch. Dist. of Phila., 590 F. Supp. 622, 628 (E.D. Pa. 1984) (Broderick, J.) (citations and internal quotation marks omitted) ("Under

---

[10] The Court notes, as Plaintiffs concede, that the Public School Code, which indisputably governs the School District's procurement practices, does not require competitive bidding for "professional services," such as 21PSTEM's principal coaching services. (See SAC ¶ 14) ("Pennsylvania's Public School Code . . . does not directly impose competitive bidding requirements with respect to procuring professional services."); see also Malloy, 657 A.2d at 920 (holding that a construction management contract fell within the "long-recognized professional skill/personal service exception to the competitive bidding requirement" in the Public School Code).

Pennsylvania law it is well-established that only a taxpayer has standing to enforce compliance with a requirement that public contracts be awarded to the 'lowest responsible bidder.' . . . The competitive bidding procedures . . . create no rights in 'disappointed bidders' who are not taxpayers."). While a disappointed bidder may have standing to challenge a school district's failure to award of contract if the bidder is also a taxpayer, the SAC does not allege that 21PSTEM pays taxes to Pennsylvania or Philadelphia. See id. As a result, the Court concludes that 21PSTEM has failed to state a claim for which relief can be granted. Count I will be dismissed with prejudice.[11]

### ii. Taxpayer Plaintiffs' Procurement Claim (Count II)

### 1. Article III Standing

Plaintiffs plead Count II–the procurement claim brought by Taxpayer Plaintiffs–in the alternative if the Court determines that 21PSTEM lack "standing" to bring Count I. As noted above, Plaintiffs do not distinguish between Article III standing and non-jurisdictional "standing" under state law. However, Plaintiffs contend that if the Court dismisses Count I on the grounds that 21PSTEM does not have a right to the legal remedy it seeks, the Court must assess whether Taxpayer Plaintiffs have Article III standing to bring Count II. (Resp. at 12.) The School District, on the other hand, contends that if the Court concludes that 21PSTEM has Article III standing to bring Count I, the Court need not address whether Taxpayer Plaintiffs have Article III standing to bring Count II. (MTD SAC at 8 n.4.) In support of this proposition, the School District cites General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 402 n.22 (1982), a factually inapposite class action decision where the Supreme Court noted that the District Court had Article

---

[11] This Court may dismiss a claim with prejudice when leave to amend would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

III jurisdiction to discuss the common issues presented by all respondents because only the standing of one respondent was challenged. 458 U.S. at 402 n.22. As a result, the Court considers whether Taxpayer Plaintiffs have Article III standing.

The Court assessed whether Taxpayer Plaintiffs had Article III standing to bring Count I of the FAC in great detail in the Opinion denying the Motion to Sever and Remand. (See ECF 23); 2019 WL 1259496, at *11–13. As the parties recognize that Count II of the SAC encompasses Count I of the FAC, the Court need not repeat that analysis here. The factual allegations in the FAC that conferred Article III standing upon Taxpayer Plaintiffs have remained in the SAC. (See FAC ¶ 66 (alleging that the School District's procurement process "has cost and will continue to cost taxpayers millions of dollars more per year than is necessary"); SAC ¶ 65 (same).) Accordingly, the Court concludes that Taxpayer Plaintiffs have alleged sufficient facts to establish Article III standing.

### 2. Merits

The School District argues that Count II must be dismissed because Taxpayer Plaintiffs must contest the award of a specific contract, rather than the School District's procurement practices in general, to state a claim under state law. (MTD SAC at 8–9.) In particular, Defendants emphasize that Taxpayer Plaintiffs fail to challenge the award RFP-567, which is not referenced in Count II of the SAC. (MTD FAC at 6) (citing Shaeffer v. City of Lancaster, 754 A.2d 719, 723 (Pa. Commw. Ct. 2000)). The School District further argues that Pennsylvania law only permits a taxpayer to bring an action challenging "the statutory and constitutional validity of [public officials'] acts." (MTD SAC at 6) (quoting Pittsburgh Palisades Park, LLC v. Commonwealth, 888 A.2d 655, 661–62 (Pa. 2005)); (MTD SAC at 8–9) (citing Pittsburgh Palisades Park, LLC, 888 A.2d at 661–62.) The School District contends that the Public School

Code's competitive bidding requirements do not apply to procurement of professional services, such as 21PSTEM's principal coaching, and that neither the Procurement Manual nor the RFP process the School District outlined have the effect of law. (MTD FAC at 7.) As a result, the School District argues that Count II must be dismissed for failure to state a claim.

At the outset, the Court disagrees that Taxpayer Plaintiffs have failed to plausibly allege any violations of state law. As noted above, the School District Code does not impose competitive bidding requirements on the procurement of professional services. However, once the School District decides to procure services through an RFP process, it is obligated to adhere to the terms of that RFP throughout the procurement process. See Lagsday v. Allegheny Cty., 453 A.2d 949, 954 (Pa. 1982). Further, while the School Reform Commission did not formally adopt the Procurement Manual, it did adopt Policy No. 610, which requires the Office of Procurement Services to maintain a Procurement Manual. (SAC Ex. 1); (see also MTD FAC at 7) ("[E]ven if the School District were required by state law to follow its own policies, plaintiffs do not allege that the Procurement Manual was ever adopted by the School Reform Commission[,] . . . [and] [o]nly those rules and regulations formally adopted by . . . the School Reform Commission . . . govern the management of a school district and the conduct of its employees."). Viewing the factual allegations in the light most favorable to Plaintiffs, the SAC alleges sufficient facts for the Court to conclude that the School District's failure to follow the Procurement Manual and/or the RFP process violated Pennsylvania law.

Next, the parties dispute whether Taxpayer Plaintiffs have standing to challenge the School District's procurement practices. To have standing under Pennsylvania law, a taxpayer must have a "substantial, direct, and immediate interest in the subject of the litigation because . . . [t]he prevention of waste of tax revenue [alone] [is] an interest which is too remote, since [the taxpayer]

is not directly or specifically affected by the loss . . . . [That interest] is merely the same interest all citizens have in having others comply with the law or the constitution." Conti Enters., Inc., 2003 WL 22594327, at *4 (citations and internal quotation marks omitted) (holding that a Pennsylvania and federal taxpayer's interest in preventing the expenditures of an additional $1 million of state and federal funds for a construction project was not sufficient to create taxpayer standing). The Court concludes that Taxpayer Plaintiffs' interest in this case is no different from that of all other Pennsylvania and Philadelphia taxpayers in having the School District minimize its expenditures by selecting the lowest bidder. As a result, Taxpayer Plaintiffs lack "ordinary" standing. See id. at *4–5.

Pennsylvania courts "have developed a restrictive standard [of standing] with narrow exceptions" for taxpayers. See id. at *5 (citation and internal quotation marks omitted). Where a taxpayer lacks a substantial, direct, and immediate interest, a taxpayer nevertheless has standing under state law if the following requirements are satisfied:

> (1) [T]he governmental action would otherwise go unchallenged;
> (2) [T]hose directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;
> (3) [J]udicial relief is appropriate;
> (4) [R]edress through other channels is unavailable; and
> (5) [N]o other persons are better situated to assert the claims.

Application of Biester, 409 A.2d 848, 852 (Pa. 1979).

Plaintiffs fail to cite, and the Court is unaware of, any cases addressing taxpayer standing where taxpayers are not challenging a particular "governmental action," as is the case here. Both parties, however, reference this test in support of their contentions. Assuming for purposes of this Motion that this test applies, Taxpayer Plaintiffs cannot establish that the first, second, and fifth elements are met. With respect to the first element, Taxpayer Plaintiffs argue that the absence of previous or pending challenges to the School District's procurement practices is "strong evidence

that they would continue to go unchallenged." (Resp. at 16.) Taxpayer Plaintiffs cite decisions from the Commonwealth Court of Pennsylvania in support of this proposition. However, Judge O'Neill, the only judge in this Circuit to address the <u>Biester</u> test, concluded that the absence of other lawsuits challenging a governmental action was not sufficient to establish that the action would go unchallenged. <u>Conti Enters., Inc.</u>, 2003 WL 22594327, at *5.

Taxpayer Plaintiffs address the second and fifth elements together, arguing that only the bidders and School District officials engaged in the allegedly unlawful practices are affected by the School District's procurement practices. (Resp. at 15.) Taxpayer Plaintiffs argue that because School District officials are not inclined to challenge their own practices, "if bidders like 21PSTEM cannot seek prospective relief, then there are no persons besides taxpayers who are 'better situated to assert the claim.'" (<u>Id.</u> at 16.) However, Taxpayer Plaintiffs fail to recognize that bidders who are also taxpayers, unlike 21PSTEM, may be able to challenge the School District's procurement practices, as discussed above. Further, as Judge O'Neill noted in <u>Conti Enterprises, Inc.</u>, the "Commonwealth[] or federal government could decide to challenge the [practices]" of the School District "based on their direct interests in overseeing the expenditure of [state] tax revenues[]" federal grants on RFPs. 2003 WL 22594327, at *5; (<u>see also</u> SAC ¶¶ 4–6 (alleging that the Commonwealth provides funding support to the School District and the School Reform Commission); <u>id.</u> ¶ 9 (alleging that RFPs for professional services may be funded at least in part by federal grants)).) Because Taxpayer Plaintiffs have not established that it can meet the ordinary standard for standing or the taxpayer exception under state law, Count II will be dismissed with prejudice.[12]

### iii. First and Fourteenth Amendment Retaliation Claims (Count III)

---

[12] <u>See</u> <u>supra</u> note 11.

Next, the School District contends that Count III must be dismissed because they are based on speculation, and therefore, 21PSTEM has failed to sufficiently allege Article III standing to seek prospective equitable relief. (MTD SAC at 9.) Alternatively, the School District argues that Plaintiffs have failed to allege that the denial of a requested debriefing was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, as required to state a retaliation claim in Count III. (Id.) The Court considers whether 21PSTEM has Article III standing before addressing the merits of Count III.

### 1. Article III Standing

The School District argues that Count III must be dismissed because it is based on speculation about what might happen in the future regarding the award of professional service contracts, any protest it might file, and whether it will obtain a debriefing if it applies for and is denied a contract and then seeks a debriefing. (Id.) In other words, the School District argues that 21PSTEM lacks Article III standing to seek prospective equitable relief in Count III because 21PSTEM has failed to allege that it "is likely to suffer future injury from the [School District's] conduct," or that "the threat of injury [is] sufficiently real and immediate." (Id. at 6) (quoting McNair, 672 F.3d at 223).) Plaintiffs, on the other hand, argue that because 21PSTEM seeks compensatory and/or nominal damages in Count III, there is no dispute that Count III alleges a case or controversy under Article III. (Resp. at 19.)

Contrary to Plaintiffs' position, the Supreme Court has addressed whether a plaintiff has Article III standing to bring equitable relief even when the plaintiff also seeks damages. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); see, e.g., Lyons, 461 U.S. at 106 n.7, 109 (holding that the plaintiff had standing to claim damages, but lacked

standing to pursue injunctive relief); <u>Smith v. Twp. of Warren</u>, No. 14-7178-BRM-LHG, 2016 WL 7409952, at *3, *5, *11–12 (D.N.J. Dec. 22, 2016) (granting motion to dismiss the plaintiff's claims for prospective injunctive relief where the plaintiff also sought damages).

Plaintiffs argue in the alternative that 21PSTEM has standing to seek prospective relief because 21PSTEM alleges that "on several occasions, [it] has responded to RFPs for professional services issued by the School District, . . . and intends to do so again in the future." (Resp. at 19) (quoting SAC ¶ 9).) As noted above, a plaintiff must plead facts establishing an "injury in fact" to demonstrate Article III standing. <u>See N.J. Physicians, Inc. v. President of U.S.</u>, 653 F.3d 234, 241 (3d Cir. 2011) (affirming dismissal for lack of standing where the plaintiffs failed to meet "their burden [of] pleading facts that establish the requisite injury in fact"). Where a plaintiff seeks prospective relief, as is the case here, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." <u>McNair</u>, 672 F.3d at 223 (quoting <u>Lyons</u>, 461 U.S. at 105).

For example, in <u>Lyons</u>, the plaintiff sued the City of Los Angeles for a Los Angeles police officer's alleged use of a chokehold on him. 461 U.S. at 97–98. The plaintiff sought an injunction enjoining the Los Angeles police department from using chokeholds where deadly force was not threatened. <u>Id.</u> at 98. The Supreme Court held that the plaintiff did not have standing to justify the equitable relief sought because the fact that the plaintiff had been choked in the past did not "establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." <u>Id.</u> at 105. For the plaintiff to have Article III standing to seek equitable relief, the Supreme Court explained, the plaintiff would have had to allege "not only . . . that he would have another encounter with the police but also . . . make the incredible assertion either, (1) that <u>all</u> police officers in Los Angeles <u>always</u> choke any citizen with

whom they happen to encounter, . . . or, (2) that the City order or authorized police officers to act in such a manner." Id. at 105–06.

Applying the principles set forth in Lyon to this case, the Court concludes that 21PSTEM has standing to seek prospective injunctive and declaratory relief against the School District in Count III. As the School District notes, 21PSTEM has not alleged that it is likely that it will be a losing bidder in the future, nor that if 21PSTEM is a losing bidder, that it will file a bid protest. However, the SAC alleges that 21PSTEM intends to respond to RFPs for professional services issued by the School District "in the future," and that the School District maintains a "policy of denying debriefings to respondents [sic] who file bid protests." (SAC ¶¶ 9, 96.) In other words, the SAC sufficiently alleges that the School District's violations of state and local law will continue into the future if undeterred. See Friends of the Earth, Inc., 528 U.S. at 184–85 (distinguishing Lyons in holding that the plaintiff had demonstrated an injury in fact because the alleged unlawful conduct was occurring when the complaint was filed, and it was "entirely reasonable" that the plaintiff would suffer harm in the future). Therefore, the Court concludes that 21PSTEM has Article III standing to seek prospective equitable relief. The Court does not draw any conclusions regarding 21PSTEM's ability to seek damages at this stage.

### 2. Merits

#### a. First Amendment Retaliation Claim

As the Court concludes that 21PSTEM has Article III standing to bring Count III, the Court proceeds to determine whether 21PSTEM has stated a First Amendment retaliation claim. "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected

conduct and the retaliatory action." Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006). In

determining whether a plaintiff has stated a First Amendment retaliation claim, "the key question

. . . is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness

from exercising his First Amendment rights." Id. (citation and internal quotation marks omitted);

see, e.g., Mirabella v. Villard, 853 F.3d 641, 646, 651 (3d Cir. 2017) (holding that a local official's

email barring residents from communicating with local officials about any topic after the residents

petitioned the local government for assistance in a neighborhood dispute and threatened the

government with litigation was retaliatory).

In this case, the SAC alleges that the School District denied 21PSTEM a requested

debriefing in retaliation against 21PSTEM for filing a bid protest. As to the first element, the

Court assumes for purposes of the instant Motion that filing a bid protest is a protected activity.[13]

The parties also do not dispute the existence of the third element—a "causal link" between

21PSTEM's bid protest and the School District's refusal to provide 21PSTEM with a debriefing.

Accordingly, the Court limits its analysis to the second and "key" element, as the parties dispute

whether the SAC sufficiently alleges that the School District's denial of 21PSTEM's request for a

debriefing would "deter a person of ordinary firmness" from filing a bid protest.

The SAC alleges that the School District will not provide a losing bidder who has filed a

bid protest with a debriefing, which includes the provision of "Evaluation Information" that

explains how the School District evaluated the bidder's RFP response and any weaknesses or gaps

in the response. (SAC ¶ 71.) 21PSTEM further alleges that this information is "highly valuable"

to any person or business that intends to respond to future RFPs, as access to this information may

---

[13] The School District assumes that 21PSTEM's bid protest was protected First Amendment
conduct for purposes of the Motion but does not concede this point. (Rep. at 7 n.5.)

allow a losing bidder to "significantly strengthen" its future RFP responses and "significantly increase" its chances of being awarded future contracts. (Id. ¶¶ 72–73.) According to 21PSTEM, the only way a losing bidder can obtain this information is by requesting a debriefing, and in light of the potential value of this information, 21PSTEM "would be substantially less likely to file a bid protest in the future" if the School District may continue punishing bid protestors by denying them access. (Id. ¶ 74.) Viewing the allegations in the light most favorable to Plaintiffs, as the Court must at this stage, the Court concludes that 21PSTEM adequately pleaded a First Amendment retaliation claim.

### b. Fourteenth Amendment Claim

In Count III, 21PSTEM also alleges that the School District has violated the Fourteenth Amendment. Plaintiffs have failed to allege any facts specific to the Fourteenth Amendment claim. Rather than grant Plaintiff leave to amend, the Court will require Plaintiff to provide full factual information in discovery to support this claim. The Motion to Dismiss Count III will be denied.

### iv. State Constitutional Claim (Count IV)

### 1. Article III Standing

Finally, 21PSTEM brings a parallel retaliation claim under the Pennsylvania Constitution, alleging that the School District's failure to provide 21PSTEM with a debriefing while its bid protest was pending amounted to unlawful retaliation in violation of Article I, Sections 20 and 26 of the Pennsylvania Constitution. (SAC ¶¶ 97–103.) In contrast to 21PSTEM's First Amendment retaliation claim in Count III, 21PSTEM seeks only declaratory and injunctive relief in Count IV. Defendants contend that their arguments as to why Count III should be dismissed also apply to Count IV. As the Court concludes that 21PSTEM has Article III standing to seek prospective

equitable relief in Count III, and Count IV is based on the same factual allegations, the same Article III standing analysis applies to Count IV. Therefore, the Court proceeds to the merits to determine whether Count IV states a claim for which relief can be granted.

### 2. Merits

Count IV of the SAC repeats the allegations in Count III and makes no allegations that the School District's conduct specifically violated Article I, Sections 20 and 26 of the Pennsylvania Constitution. Nor do the parties cite any cases pertaining to the viability of 21PSTEM's claims under the Pennsylvania Constitution.

Article I, Section 20 of the Pennsylvania Constitution provides citizens with a right to petition the government. See League of Women Voters v. Commonwealth, 178 A.3d 737, 782–83 (Pa. 2018) (citing PA. CONST. art. I, § 20). Article I, Section 26 prohibits the Commonwealth of Pennsylvania and any political subdivision thereof from "deny[ing] to any person the enjoyment of a civil right" and "discriminat[ing] against any person in the exercise of any civil right." PA. CONST. art. I, § 26; see also Fischer v. Dep't of Public Welfare, 502 A.2d 114, 123 (Pa. 1985) (characterizing Article I, Section 26 as "the Commonwealth's non-discrimination clause").

With respect to 21PSTEM's claim under Article I, Section 20, the School District argues that the same standard governing 21PSTEM's First Amendment retaliation claim applies. (Rep. at 6.) However, the case that the School District cites in support of his proposition, In re M.J.M., 858 A.2d 1259 (Pa. Super. Ct. 2004), did not state that the same standard applies to First Amendment retaliation claims as to claims brought under Article I, Section 20 of the Pennsylvania Constitution. (Rep. at 6.) Rather, the court concluded that although the appellant did not distinguish between the application of the First Amendment and Article I, Section 7 of the Pennsylvania Constitution in arguing that a state law was unconstitutional, the court "believe[d]

the result [was] the same under either constitution." In re M.J.M., 858 A.2d at 1266–67. Undermining the School District's argument, the Pennsylvania Supreme Court has noted that Article I, Section 20 "predate[s] the First Amendment . . ., and that, although [its] interpretation is often guided by analogy to First Amendment jurisprudence, [it] provide[s] broader protection of individual freedom of speech and association." League of Women Voters, 178 A.3d at 782; see also Gas Drilling Awareness Coal. v. Powers, No. 1:10-CV-1997, 2011 WL 6151434, at *4, *5, *6 (M.D. Pa. Dec. 12, 2011) (denying motion to dismiss as to the First Amendment retaliation claim, but granting the motion as to the claim under Article I, Section 20 of the Pennsylvania Constitution); but see Montanye v. Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 524 (E.D. Pa. 2004) (Dubois, J.) (quoting Small v. Horn, 722 A.2d 664, 672 n.13 (Pa. 1998) ("Section 26 is . . . 'analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment.'")).

Count IV makes conclusory allegations that the School District's refusal to provide a debriefing constituted unlawful retaliation in violation of Article I, Sections 20 and 26 of the Pennsylvania Constitution, without alleging facts in support. Therefore, 21PSTEM will be required to provide factual information in discovery to support Count IV. The Motion to Dismiss Count IV will be denied.

## VI.    Conclusion

For the foregoing reasons, the Motion to Dismiss will be granted, with prejudice, as to Counts I and II, and denied as to Counts III and IV.

An appropriate Order follows.

O:\CIVIL 18\18-3982 Weathers v School District of Phila\18cv3982 Memo re Motion to Dismiss.docx