**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN M. WEATHERS, et al.,**<br><br>  v.<br><br>**THE SCHOOL DISTRICT OF PHILADELPHIA, et al** | **CIVIL ACTION**<br><br>**NO. 18-3982** |

Baylson, J.                                                                 August 17, 2020

### MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.     **Introduction**

In this litigation, Plaintiff 21st Century Partnership for STEM Education ("21PSTEM"), a disappointed bidder on an RFP from Defendant Philadelphia School District ("the District"), claims that the District denied it a debriefing session in retaliation for its bid protest and lawsuit over the District's procurement practices.  Now, the District[1] moves for summary judgment.

Because (1) 21PSTEM did not engage in any activity protected by the federal constitution, (2) any retaliation is not severe enough to be actionable under federal law, and (3) 21PSTEM cannot prove that any retaliation can be attributed to the District, the Court will GRANT the District summary judgment on 21PSTEM's federal constitutional claims.  However, because a state court is a more appropriate forum for 21PSTEM's independent state-law claims, this Court

---

[1] Although the School Reform Commission remains a named party, it has not existed since June 30, 2018, and so no claims remain against it.

1

will DENY the District's Motion for Summary Judgment otherwise and remand and return this litigation to state court.

## II.  <u>Background</u>

As this is a motion for summary judgment, this Court must view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favor."  <u>See, e.g.</u>, <u>In re Chocolate Confectionary Antitrust Litig.</u>, 801 F.3d 383, 396 (3d Cir. 2015).

### a.  **Proceedings Within the School District of Philadelphia**

#### i.   <u>RFP-567</u>

On November 9, 2017, the District's Office of Procurement Services ("OPS") issued Request for Proposal 567 ("RFP-567"), which asked bidders to propose coaching and professional development programming for first- and second-year school principals.  ECF 40-2 ("Pl. SUMF") ¶ 65.  21PSTEM timely responded to the RFP.  <u>Id.</u> ¶ 65.  21PSTEM staff spent over 100 hours preparing 21PSTEM's response.  <u>Id.</u> ¶ 69.  At some point in the first quarter of 2018, the District awarded the RFP-567 contract to The New Teachers Project ("TNTP").  <u>Id.</u> ¶ 73.

#### ii.   <u>21PSTEM's Bid Protest</u>

The award of the RFP-567 contract to TNTP triggered a series of complaints by 21PSTEM and its counsel, expressed in correspondence and phone calls, that eventually escalated to this litigation.  These complaints, taken collectively, made up what this Court will refer to as 21PSTEM's "bid protest."

The bid protest began after 21PSTEM's President, F. Joseph Merlino, learned via an internet search that the District had awarded the RFP-567 contract to TNTP.  <u>Id.</u> ¶¶ 69, 73.  He

2

wrote an email, dated March 23, 2018, and a letter, dated April 2, 2018, to protest the contract award.  ECF 40-7 at APP0289 (email); id. at APP0291 (letter).  Merlino's chief complaint was that 21PSTEM's proposal was over $400,000 cheaper per year than TNTP's.  ECF 40-7 at APP0289 (email); ECF 40-7 at APP0291 (letter).  Merlino also complained in his letter that the District had not notified 21PSTEM of the results of the RFP or published its decision.  ECF 40-7 at APP0289.

In the March 23 email, 21PSTEM requested a "debriefing."  ECF 40-7 at APP0289 (email). A debriefing is a meeting that offers a bidder insight on what the contracting agency thought of its bid and how it can be a stronger bidder in the future.  Pl. SUMF ¶ 33.   Because they may put bidders in a better position for future RFPs, debriefings can be valuable.[2] Id. ¶ 34.

21PSTEM had responded to two District RFPs before: one in 2013, and one in 2014. Merlino Dep. 58:13–59:13.  It won neither.  Id. 58:20-24.  21PSTEM did not request a debriefing in either instance.  Id. 59:2–6.  At his deposition, Merlino explained that 21PSTEM did not seek debriefings after it lost in the prior two RFPs because "21PSTEM was not informed that they did not receive the award, nor were they informed they had a right to a debriefing, otherwise, we would have sought one."  Id.  However, OPS's Policies & Procedures Manual, as it stood at the time, provided that "[d]ebriefings may be scheduled at the request of any bidder/proposer."  ECF 40-7 at APP0284.

---

[2] The parties dispute whether debriefings are valuable.  For the purposes of this Motion, this Court accepts that they are.  As explained below, particularly in Section IV(a)(i)(1)(C), the District is entitled to summary judgment on 21PSTEM's federal constitutional claims regardless of any factual disputes about the value of debriefings.

Finally, in the March 23 email, 21PSTEM also requested certain documents and information that the Commonwealth of Pennsylvania Procurement Handbook states shall be made available to disappointed bidders:

    a.  Copies of the vendor evaluation score sheets;

    b.  The overall evaluated cost and technical rating of the winning contractor;

    c.  The overall ranking of all vendors;

    d.  A summary of the rationale for the award; and

    e.  The opportunity to have answered any relevant questions about the process.

ECF 40-7 at APP0289 (email).  Items (d) and (e) appear to refer to a bid debriefing meeting, rather than particular documents.

On April 5, 2018, Biko Taylor, then the District's Executive Director of Procurement Services, responded by letter.  ECF 38-2 ("Shore Dep.") Ex. 7.  Taylor's letter appeared to take two inconsistent positions on whether a debriefing would be available.  On the letter's second page, Taylor offered 21PSTEM a debriefing.  Id.  On the third page, Taylor refused 21PSTEM's request for items (a)-(e) above with a blanket denial, citing two exceptions to the Right-to-Know Law.  Id.

On April 16, 2018, Justin C. Danilewitz and Joshua W.B. Richards, counsel for 21PSTEM at Saul Ewing,[3] wrote back to Taylor.  Shore Dep. Ex. 8.  They unequivocally accepted the

---

[3] The record shows that, at various times, at least three Saul Ewing attorneys have worked together to represent 21PSTEM on this matter: Justin C. Danilewitz, Joshua W.B. Richards, and Albert F. Moran.  For simplicity, this Court will refer to 21PSTEM's attorneys at Saul Ewing collectively, as "Saul Ewing attorneys," or similar.

4

District's offer of a debriefing, and argued that the District could not withhold the documents at issue.  Id. at 6–9.  They further argued that even if the District could legally withhold the documents at this stage, the District was better off giving the documents up now than in civil litigation.  Id. at 9.

21PSTEM's lawyers at Saul Ewing also made several new arguments that the RFP-567 process had been improper.   First, they argued that the District had not followed certain requirements under the Commonwealth's Procurement Code and that, generally, 21PSTEM had not been treated fairly.  Id. at 2, 5–6.  Second, they argued that TNTP, as an incumbent vendor whose staff had professional ties to the District's, might have had opportunities to interact with District employees and press its case that other bidders lacked—in violation of an RFP requirement that there be "no communication concerning this RFP between any prospective respondents and/or their agent(s) with any District staff or District representatives."  Id. at 3–5.

Between April 17 and May 8 Saul Ewing attorneys and Miles Shore, then Deputy General Counsel of the District, continued corresponding and also spoke by phone.  ECF 38-1 ¶ 8.  On a May 4 call, Shore conveyed to Saul Ewing that Taylor had decided not to schedule a debriefing with 21PSTEM while 21PSTEM's bid protest was pending. ECF 40-2 ("Pl. SUMF") ¶¶ 89–90; ECF 43 ("Def. Resp. to Pl. SUMF") ¶¶ 89–90.  On May 9, the Saul Ewing attorneys followed up by letter to confirm their understanding of the District's positions on various disputed questions.  Shore Dep. Ex. 9.  In relevant part, the letter stated that they understood the District's position on

a debriefing to be that "the Partnership is not entitled to a debriefing while the Partnership's protest is pending." Shore Dep. Ex. 9.[4]

On May 22, Taylor sent 21PSTEM a letter containing the District's "Final Determination" rejecting 21PSTEM's bid protest. Shore Dep. Ex. 11. The Final Determination letter did not specifically address the subject of debriefing. Id.

That same day, Shore also replied to Saul Ewing's May 9 letter by email. Shore Dep. Ex. 10. He confirmed, in relevant part, that "I advised you that the School District chooses not to provide a debriefing to your client while the Protest is pending." Id. The email does not clarify why, if the School District had rejected 21PSTEM's bid protest the same day, the District still considered the protest "pending." Id. Shore later testified that the District decided not to provide a debriefing at that time because it anticipated litigation over the RFP. Shore Dep. 87:16–89:3; Def. Resp. to Pl. SUMF ¶ 101.

Finally, also that day, Shore sent a third message explaining why the District was denying 21PSTEM's request for the documents and information listed in the Commonwealth of Pennsylvania Procurement Handbook. Shore Dep. Ex. 14. Again, items (d)-(e) described in the Commonwealth Procurement Handbook appear to refer to a bid debriefing meeting, not documents.[5]

---

[4] 21PSTEM's brief insists that the District "denied" it a debriefing. Given the May 9 letter, there can be no genuine dispute of fact about whether the District intended to deny 21PSTEM a debriefing as of May 9, 2018. It did not. Nor is there any genuine dispute of fact about whether 21PSTEM could reasonably have understood the District's intentions that way at that time.

[5] Although there is no room for genuine dispute about whether the District intended to deny 21PSTEM a debriefing altogether, there is a genuine dispute of fact about how 21PSTEM should

**b.  Complaint Filed in the Court of Common Pleas**

On May 30, 2018, three individual plaintiffs, all Philadelphia residents and taxpayers, filed suit in the Philadelphia Court of Common Pleas against the District, the School Reform Commission, and TNTP to challenge the contract award to TNTP.  ECF 1-2 ("Compl.").  Two of the individual plaintiffs worked for 21PSTEM; the third was a math professor.  Id. ¶¶ 6–8.  After objecting to the RFP-567 contract award on grounds that closely tracked the grounds for the bid protest, they asked the court to set aside the RFP-567 contract award and order the District to conduct a new RFP process "that complies in full with the requirements of RFP-567 and the

---

have understood the District's intentions with respect to a bid debriefing after May 22.  The District's first communication, terminating the bid protest, and the second communication's statement that the District would not provide a briefing while 21PSTEM's protest was pending, are in tension.  Moreover, the third communication could be read as denying 21PSTEM a bid protest.

This factual dispute, although genuine, is not material.  The District is entitled to summary judgment on 21PSTEM's federal constitutional claims even assuming that 21PSTEM was confused, from May 22 onwards, about whether the District had decided to deny it a debriefing altogether.  There are two reasons.  Both rely on the longstanding principle that "[e]quity aids the vigilant, not those who rest on their rights."  Valenti v. Mitchell, 790 F. Supp. 534, 546 (E.D. Pa. 1992) (Gawthrop, J.), aff'd, 962 F.2d 288, 299 (3d Cir. 1992).

First, because 21PSTEM took no steps to clarify the District's intentions.  There is no evidence suggesting that seeking such a clarification would have burdened 21PSTEM.  Indeed, 21PSTEM's attorneys at Saul Ewing were in regular contact with at least one District attorney.  21PSTEM cannot premise its case on a miscommunication that it could have easily clarified.

Second, because 21PSTEM never took steps to secure its right to a debriefing when it lost the 2013 or 2014 District RFPs.  As explained at greater length in Section IV(a)(i)(1)(C) below, this belies its claim that a severe delay in receiving a debriefing—even a delay so severe as to be tantamount to a denial—is a cognizable deterrent to 21PSTEM's petitioning activity.

Procurement Manual," and to order the District to fully comply with the Procurement Manual and its own RFP requirements going forward.  See generally id.[6]

On August 28, the individual plaintiffs filed a First Amended Complaint ("FAC") that added 21PSTEM as a plaintiff and dismissed The New Teacher Project as a defendant.  ECF 1-1 ¶ 5; ECF 1-3.  The FAC withdrew the request that RFP-567 be vacated.  It still, however, requested declaratory and injunctive relief to require the District to comply with the Procurement Manual and its own RFP requirements, and added a § 1983 claim arguing that the District's denying 21PSTEM a debriefing violated the federal constitution.  ECF 1-3 ¶¶ 39–42, 80.

### c.   Removal to U.S. District Court

On September 14, 2018, the District removed the FAC to this Court.  ECF 1.

There were extensive procedural motions and accompanying briefs for approximately six months, which are described in the prior opinion of this Court.  See Weathers, 383 F. Supp. at 395–97.  What is relevant here occurred on April 8, 2019.  That day, this Court allowed Plaintiffs to file their Second Amended Complaint ("SAC").  ECF 26, 27.  The SAC sought essentially the same relief as the FAC, but added a Fourteenth Amendment claim to the § 1983 First Amendment claim.  ECF 27 at 14–15.  The SAC also added a retaliation claim under the state constitution.  Id. at 14–16.  In all, there were four counts:

---

[6] This Court reviewed the proceedings in state court in more detail in its opinion on the Motion to Dismiss.  See Weathers v. Sch. Dist. of Phila., 383 F. Supp. 3d 388, 396 (E.D. Pa. 2019) (Baylson, J.).  The individual plaintiffs originally requested a preliminary injunction to prevent the RFP-567 contract award from taking effect, but eventually withdrew that request.  Id.  This Court infers that the contract then entered into effect.

- Count One: 21PSTEM's claim for declaratory and injunctive relief under state law concerning the District's procurement practices

- Count Two: the individual plaintiffs' claim for declaratory and injunctive relief under state law concerning the District's procurement practices

- Count Three: 21PSTEM's § 1983 First and Fourteenth Amendment retaliation claim

- Count Four: 21PSTEM's state constitutional retaliation claim

That same day, this Court granted the District's Motion to Dismiss, as applied to the SAC, in part. Weathers, 383 F. Supp. at 409. This Court dismissed Counts One and Two, but allowed 21PSTEM to proceed on Counts Three and Four. Id.

On December 2, 2019, following extensive discovery, the District moved for summary judgment on Counts Three and Four. ECF 38 ("Dist. MSJ Br."). On December 20, 21PSTEM responded. ECF 40 ("MSJ Opp. Br."). On January 6, 2020, the District replied. ECF 42. This Court held a hearing on the Motion on July 20, 2020 after several COVID-19-related postponements. ECF 53. The parties provided supplemental briefing on July 31, 2020. ECF 54 ("21PSTEM Supp. Br."), 55.[7]

### d. Further Proceedings with the School District

On August 19, 2019, Merlino met with District officials. ECF 40-3 Ex. 1 ("Merlino Dep.") 17:23–19:16, 128:20–129:18. According to 21PSTEM's counsel's representations at the hearing on this Motion, the parties agree that this meeting was a debriefing, and an adequate one.

---

[7] At the hearing, the Court raised a question not addressed in the parties' briefs: whether the First Amendment protects 21PSTEM's conduct. The supplemental briefs focused on this question.

21PSTEM has not responded to any District RFPs since RFP-567.  Merlino Dep. 47:15–48:2; 50:21–51:2.

### e.  Background on the Infor Dispute

21PSTEM also highlights a dispute between the District and another disappointed RFP bidder, Infor.  In the spring of 2018, Infor requested a debriefing promptly after learning that it had not received a contract award under District RFP-567.  Pl. SUMF ¶¶ 125, 127; Def. Resp. to Pl. SUMF ¶ 125.  Infor also protested the RFP process's result, and the District would not schedule a debriefing while the protest was pending.  Pl. SUMF ¶ 127.  The District issued a final determination denying Infor's protest on May 29, 2018, Def. Resp. to Pl. SUMF ¶ 127, but still did not schedule a debriefing, Pl. SUMF ¶ 128.

Shortly thereafter, Infor retained counsel at Blank Rome.  Pl. SUMF ¶ 129.  On June 12, 2018, the Blank Rome attorneys[8] wrote to the District and threatened to sue over the RFP-567 award if a debriefing had not been scheduled by June 15.  ECF 40-8 at APP0365–66.  They attached a draft complaint to their message.  Id.  The District's General Counsel spoke to the Blank Rome attorneys on June 14, and scheduled a debriefing which took place on June 25, 2018.[9]  Def. Resp. to Pl. SUMF ¶ 127; ECF 40-5 Ex. 5 ("Rauch Dep.") 88:6–90:4.

---

[8] Like with 21PSTEM's attorneys at Saul Ewing, this Court refers to these attorneys as "the Blank Rome attorneys" for simplicity.

[9] 21PSTEM insists that it was only the threat of litigation that led the General Counsel to schedule the debriefing.  There is a genuine dispute of fact on this point. as the General Counsel testified at her deposition that she could not recall whether she had discussed the draft complaint and threat of litigation in her June 14 call with the Blank Rome attorneys.  Rauch Dep. 88:6-90:4.  Given the record's ambiguity, the Court will assume that 21PSTEM is correct that only the threat of litigation led the General Counsel to schedule the debriefing.

### III.   <u>Legal Standard</u>

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  <u>Id.</u>

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.  After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1)(A); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as to the material facts").  Summary judgment is appropriate if the adverse

---

However, this dispute of fact, however genuine, is not material.  Instead, for the reasons explained below in Section IV(a)(i)(2)(B), drawing 21PSTEM's preferred conclusion ultimately undermines 21PSTEM's opposition to summary judgment.

party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Under Rule 56, this Court must view the evidence presented on the motion in the light most favorable to the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

To be clear, this Court may grant summary judgment even in the face of genuine disputes of fact.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 244–45; <u>see also</u> <u>Sameric Corp. of Del., Inc. v. Philadelphia</u>, 142 F.3d 582, 593 (3d Cir. 1998) ("[O]nly issues of *material* fact preclude entry of summary judgment."); <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995) (granting summary judgment where disputed fact was not material).

## IV.  <u>Discussion</u>

This Court will first address 21PSTEM's federal constitutional claims, and then turn to 21PSTEM's state constitutional claims.

### a.  Count Three: Federal Constitutional Claims Under § 1983

#### i.  <u>First Amendment Retaliation Claim</u>

21PSTEM brings its federal constitutional claims under 42 USC § 1983, which imposes liability on those who interfere with U.S. citizens' federally-protected rights.  To win on a § 1983 claim against a political subdivision such as the District, 21PSTEM must make two showings.  First, it must show an actual violation of its constitutional rights.  Second, it must show that that violation can be attributed to the District under the principles of <u>Monell v. Department of Social Services of New York</u>, 436 U.S. 658 (1978), and its progeny.

In analyzing these issues here, this Court is mindful that a federal court should not lightly intrude in a local school district's procurement practices.  The Third Circuit has "cautioned against extending First Amendment holdings if they would cause the judiciary to 'intrude itself into such traditional practices as contract awards by the government's executive, be it on a federal, state or local level.'"  McClintock v. Eichelberger, 169 F.3d 812, 817 (3d Cir. 1999) (quoting Horn v. Kean, 796 F.3d 668, 678 (3d Cir. 1986) (en banc)).  Similarly, the Supreme Court has observed in a First Amendment retaliation lawsuit brought by an independent contractor that contracting agencies have an "interest in being free from intensive judicial supervision of [their] daily management functions …."  Bd. of Cty. Com'rs, Wabaunsee Cty. v. Umbehr, 518 U.S. 668, 678 (1996).  And in the context of claims under the Individuals with Disabilities Education Act, the Supreme Court has long cautioned against federal courts "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review."  Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982)).

The District argues that it is entitled to summary judgment because:

1. McClintock v. Eichelberger entirely forecloses 21PSTEM's First Amendment claims;

2. The First Amendment does not protect 21PSTEM's conduct;

3. The District's alleged retaliatory conduct, delaying debriefings during the pendency of bid protests and litigation, is not "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and so 21PSTEM cannot win on a retaliation claim; and

13

4. Even if 21PSTEM's constitutional rights were violated, <u>Monell</u> does not allow that violation to be attributed to the District.[10]

The District is entitled to summary judgment on three of these four grounds. The First Amendment does not protect 21PSTEM's conduct, the District's alleged retaliatory conduct was not severe enough to support a retaliation claim, and <u>Monell</u> does not allow any constitutional violation to be attributed to the District. However, <u>McClintock</u> does not entirely foreclose 21PSTEM's First Amendment claims.

*1. The District Did Not Violate 21PSTEM's First Amendment Rights*

The basic principles of First Amendment retaliation are well established. "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right." <u>Mirabella v. Villard</u>, 853 F.3d 641, 649 (3d Cir. 2017) (quoting <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006)) (alteration in original) (internal quotations omitted). "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." <u>Thomas v. Indep. Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006) (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003)).

---

[10] The District also makes standing arguments which the Court will not reach. The District agrees that "[t]he Court does not need to reach the issue of standing if it accepts the District's [other] arguments." Dist. MSJ Br. at 9 n.4.

Before analyzing the substance of 21PSTEM's retaliation claim, this Court must decide a threshold issue: whether the 1999 Third Circuit case <u>McClintock v. Eichelberger</u> bars the claim altogether.

    A.  <u>McClintock v. Eichelberger</u> Does Not Entirely Foreclose 21PSTEM's Claims

Under <u>McClintock</u>, an independent contractor with no preexisting relationship with a given contracting agency cannot sue the contracting agency for denying him or her a contract because of his or her First Amendment activities.  169 F.3d 812 at 817.  The Third Circuit based its ruling on the prudential concerns expressed in <u>Horn v. Kean</u>, which warned "against extending First Amendment holdings if they would cause the judiciary to 'intrude itself into such traditional practices as contract awards by the government's executive ….'"  <u>Id.</u> (quoting <u>Horn</u>, 796 F.3d at 678).

The <u>McClintock</u> holding, however, does not foreclose 21PSTEM's retaliation claim.  21PSTEM's retaliation claim is not nearly as intrusive to local government practices as the <u>McClintock</u> plaintiffs'.  The plaintiffs in <u>McClintock</u> sought damages based on the fact that the agency allegedly denied them a contract for their political activity.  <u>Id.</u> at 815, 817.  Awarding relief would have interfered with the contracting agency's substantive decisionmaking by forcing the agency to consider the risk of litigation for perceived retaliation when making contracting decisions.  <u>Cf.</u> <u>Umbehr</u>, 518 U.S. at 678 (acknowledging contracting agency's concern about opening contracting agencies to retaliation litigation causing "the *de facto* imposition of rigid contracting rules").  Here, 21PSTEM seeks relief based on the fact that the District allegedly

denied them a debriefing.  Because a debriefing is a routine step taken after the contract is awarded, awarding relief would not interfere with the District's substantive decisionmaking.  This distinction from McClintock means that this Court should not dismiss 21PSTEM's retaliation claim as without any basis.

Holding that McClintock does not bar 21PSTEM's claim does not mean that this Court rejects McClintock's and Horn's prudential concerns.  Quite the opposite.  Those prudential concerns simply have more force in this Court's fact-specific analysis of whether 21PSTEM can prove its claim at trial.  As explained below, 21PSTEM cannot.

### B.  21PSTEM Did Not Engage in Constitutionally Protected Activity

To begin with, it is important to be clear about what 21PSTEM's allegedly constitutionally protected activities were.  There were two: its bid protest, and this litigation.[11]

21PSTEM claims that these activities were protected under the First Amendment's Petition Clause and the Speech Clause.  The Petition Clause protects "the right of the people … to petition the Government for a redress of grievances."  The Speech Clause protects "the freedom of speech."  There is no dispute that 21PSTEM's activities come within the scope of both clauses.  For simplicity, this Court will refer to 21PSTEM's protest and lawsuit as its "petitioning" activity.

Speech and petitioning activities "share substantial common ground," Borough of Duryea, Pa. v. Guarnieri, 563 U.S. 379, 388 (2011), and a plaintiff proceeding under the Petition Clause

---

[11] There is no apparent reason to distinguish the periods before and after 21PSTEM joined the lawsuit as a plaintiff in the FAC.  Two of the individual plaintiffs in the original complaint were 21PSTEM employees, and the original complaint and the FAC were similar.  The parties do not suggest that the Court should make any such distinction.

may "just as easily … allege[] that his employer retaliated against him for the speech contained within his" petition, id. at 387.  For that reason, the same legal tests generally apply regardless of whether a plaintiff proceeds under the Petition Clause or the Speech Clause.  Id. at 398.

Here, two such tests apply: the "public concern" test and Pickering balancing.[12]

1.  The "public concern" test mandates that 21PSTEM's petitioning activity must relate to matters of public concern; if its petitioning activity is "on a matter of purely private concern, [its] First Amendment interest must give way …." Guarnieri, 564 U.S. at 398 (citing San Diego v. Roe, 543 U.S. 77, 82–83 (2004)).

2.  Pickering balancing requires this Court to balance 21PSTEM's "First Amendment interest … against the countervailing interest of the government in the effective and efficient management of its internal affairs." Id. (citing Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cty., 391 U.S. 563, 568 (1968)).

---

[12] Generally, these tests apply to lawsuits by government employees or independent contractors with preexisting relationships with the contracting agency.  See Guarnieri, 564 U.S. at 398 (applying tests to claim by government employee); Umbehr, 518 U.S. at 678 (extending the framework for government employees to independent contractors with preexisting relationships).

21PSTEM is differently situated: it is only an aspiring independent contractor.  However, there is "no reason to believe that proper application of [the public concern test and] the Pickering balancing test cannot accommodate the differences between," Umbehr, 518 U.S. at 678, independent contractors with or without preexisting relationships with the contracting agency.  See also Rosaura Bldg. Corp. v. Mayaguez, 778 F.3d 55, 65–67 (1st Cir. 2015) (applying public concern test and Pickering balancing to suit by aspiring contractor); Oscar Renda Contracting, Inc. v. Lubbock, No. 5:05-CV-029-C, 2008 WL 11429735, at *9–14 (N.D. Tex. Apr. 18, 2008) (Cummings, J.), aff'd, 577 F.3d 264 (5th Cir. 2009) (same).

Also, the parties agree that the public concern test applies.  There is no principled reason to apply the public concern test but not Pickering balancing.

17

Applying each of these tests is a question of law for the court.  See, e.g., Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 466 (3d Cir. 2015), and cases cited.

21PSTEM's claim fails both tests.

    i. Public Concern

21PSTEM was not and is not petitioning on a matter of public concern.  "[W]hether [21PSTEM's] petition relates to a matter of public concern will depend on 'the content, form, and context of [the petitioning activity], as revealed by the whole record.'"  Guarnieri, 564 U.S. at 398 (quoting Connick v. Myers, 461 U.S. 138, 147–48 & n.7 (1983)).  "The right … under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday [contracting] disputes into matters for constitutional litigation in the federal courts."  Id.

21PSTEM's bid protest's content and form[13] demonstrate that the protest did not relate to a matter of public concern.

First, content.  That none of the issues raised in 21PSTEM's bid protest were primarily of concern to the public supports the conclusion that the bid protest did not relate to a matter of public concern. 21PSTEM raised four issues over the course of its bid protest:

    1) 21PSTEM's opinion that its proposal was superior to TNTP's, and that the District's proposal review process had allowed the District to overlook that fact;

---

[13] Given that the bid protest seems to have been exactly what it appeared to be, its "context" is essentially the same as its content and form.

2)  21PSTEM's concern that TNTP, as an existing District contractor whose staff had professional ties to District staff, had a leg up in the RFP-567 award process;

3)  21PSTEM's annoyance that the District had not told it the outcome of the RFP; and

4)  21PSTEM's desire for a debriefing and associated information.

All of these were primarily of concern to 21PSTEM as an aspiring contractor, not to the public.

Second, form.  The manner in which 21PSTEM protested the District's decision also supports the conclusion that the protest did not relate to a matter of public concern.  "A petition filed … using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the [contracting] context."  Id.  Here, the bid protest was carried out by unpublished correspondence and telephone calls.  That suggests that 21PSTEM did not seek to communicate to the public or advance a political or social point of view.

This litigation's content and context[14] demonstrate that this litigation does not relate to a matter of public concern.  This lawsuit was intended to vindicate 21PSTEM's position that it was at a disadvantage in bidding on RFP-567 because the District did not fully comply with state law (or, state law as 21PSTEM understood it).  This is clear on the face of the original complaint, as

---

[14] That this petitioning activity comes in the form of a lawsuit does not weigh strongly for or against a finding that the lawsuit related to a matter of public concern.  Certainly, this Court is a more public forum than the correspondence and phone calls that made up the bid protest.  But 21PSTEM's decision to litigate in this Court still means that it has chosen a considerably less public forum than, for example, *The Philadelphia Inquirer*, see Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 987 n.5 (3d Cir. 2014) (confirming that a plaintiff's "report to *The Philadelphia Inquirer* exposing the School District's alleged impropriety in the award of the IBS contract implicates a matter of public concern").

filed in state court, and even clearer when that complaint is read with the preceding bid protest in mind.  That original state-court complaint sought injunctive relief forcing the District to redo RFP-567.  Compl. at 19.  It also sought to ensure that the RFP-567 do-over "complies in full with the requirements of RFP-567 and the Procurement Manual."  Id.  This was simply an extension of the bid protest.  True, 21PSTEM omitted the prayer for an RFP-567 do-over from the First and Second Amended Complaints.  But by that time, 21PSTEM had lost its bid for injunctive relief to prevent RFP-567 from entering into effect.  The do-over was a lost cause.  And in any event the First and Second Amended Complaints arose from a specific feud between 21PSTEM and the District over the process for and outcome of RFP-567.  21PSTEM's attempts, first in state court and now here, to force the District to adhere to certain processes going forward are inextricable from 21PSTEM's apparent belief that those processes would have helped 21PSTEM in future RFPs.  Throughout this litigation, 21PSTEM has been trying to advance its own business interests, not a political or social point of view.

That TNTP's methods are disputed in the public sphere, or that a local news organization twice wrote about 21PSTEM's lawsuit,[15] see 21PSTEM Supp. Br. Exs. A-D, does not transmute this lawsuit into one related to a matter of public concern.  Those facts simply do not overcome this Court's conclusion based on the lawsuit's content and context.

---

[15] The *Philadelphia Public School Notebook* wrote about the lawsuit on June 28 and August 30, 2018.  21PSTEM Supp. Br. Exs. C-D.  Both articles discussed District procurement policy, the lawsuit, and more generally, what the District's selecting TNTP over 21PSTEM suggested about the state of the District.  21PSTEM provides these articles as evidence that its petitioning activity related to a matter of public concern.  It does not contend that the District retaliated against it for any reason related to these articles.

Finally, 21PSTEM's claim that the District retaliated by denying it a debriefing does not make the lawsuit relate to a matter of public concern.  Whether 21PSTEM receives a debriefing, again, is particularly and primarily 21PSTEM's concern.  While a charge that a plaintiff has been retaliated against for suing *may* be a matter of public concern, a plaintiff must show more than that they believe that they were retaliated against.  The public concern test would be effectively nullified if the mere fact that a plaintiff believes itself to be the victim of retaliation for suing were enough to make a lawsuit a matter of public concern.

That the bid protest and litigation touched on matters of at least some interest to the public does not mean that they related to a matter of public concern so as to bring them within the protection of the First Amendment.  Of course, questions such as whether the District had selected the ideal principal training proposal are not entirely outside the realm of the public's interest.  But given the bid protest's and litigation's focus on 21PSTEM's own concerns, and the manner in which 21PSTEM carried out the protest, the fact that the bid protest and litigation touched on these matters did not elevate its private concern in the bid protest or litigation to a public concern.  At most, 21PSTEM's protest and lawsuit relate to the public's generalized "interest[] in how government officers are performing their duties," which "will not always suffice to show a matter of public concern."  Guarnieri, 564 U.S. at 399.

The content, form, and context of 21PSTEM's petitioning activity also distinguish this case from Czurlanis v. Albanese, 721 F.2d 98 (3d Cir. 1983).  In that case, the plaintiff spoke at a public meeting, in his capacity "as a concerned citizen and taxpayer and not as an aggrieved employee," and made allegations including "serious deficiencies in record keeping."  Id. at 104.  In other

21

words, the Czurlanis plaintiff spoke in the most public forum possible, primarily in his role as a citizen, and about possibly serious government misfeasance. 21PSTEM spoke in comparatively private forums, primarily in its role as an aspiring contractor, about less urgent matters. Given those distinctions, Czurlanis does not require this Court to hold that 21PSTEM's petitioning activity related to a matter of public concern.

Neither the lawsuit nor the bid protest related to a matter of public concern. Neither, therefore, was protected by the First Amendment. And because the First Amendment protects neither, 21PSTEM cannot make out a First Amendment claim.

ii.    Pickering Balancing

There is another fundamental reason the First Amendment does not protect 21PSTEM's petitioning activity: 21PSTEM's claim fails the Pickering balancing test. "Pickering requires a fact-sensitive and deferential weighing of the government's legitimate interests." Umbehr, 518 U.S. at 678. Here, the District has an obvious and legitimate self-interest in not meeting with an aspiring contractor to describe its reasoning and decisionmaking process when the aspiring contractor is attacking both. 21PSTEM's interests do not outweigh the District's. Especially given the deference due the District in the Pickering analysis, 21PSTEM's claim fails the Pickering balancing test.

21PSTEM's lawsuit fails both the public concern test and Pickering balancing. 21PSTEM's conduct, therefore, was not protected by the First Amendment.

C.  The Purportedly Retaliatory Action Would Not Deter A Person of Ordinary
Firmness from Exercising His or Her Constitutional Rights

It is important to be clear about what purportedly retaliatory action the District took.  The District delayed 21PSTEM's debriefing.  It did not deny 21PSTEM a debriefing altogether.  The District first delayed 21PSTEM a debriefing because of the pending protest.  At that time, it communicated clearly to 21PSTEM that the debriefing was being delayed because of the protest.  The District then continued delaying the debriefing because it anticipated litigation, and then delayed further because the anticipated litigation came to be.  In 2019, although the litigation was still pending, the District held a debriefing meeting with 21PSTEM.  None of these facts are the subject of any genuine dispute.

For the purposes of this Motion, this Court accepts that this debriefing was valuable to 21PSTEM.  However, this Court must also bear in mind that in each of 21PSTEM's prior two failed bids on District RFPs, 21PSTEM did not request a debriefing (or, for that matter, protest or litigate the District's adverse decisions).

The parties have not identified, and this Court is otherwise unaware of, any cases that address whether the delayed debriefing would deter a person of ordinary firmness from exercising his or her constitutional rights.  Particularly given this Court's stated prudential concerns, 21PSTEM's failure to identify favorable caselaw supporting its legal arguments is grounds for substantial doubt that the delayed debriefing can support a First Amendment claim.

Although the deterrence threshold is "very low," "the nature of the retaliatory acts committed by the public employer must be 'more than *de minimis* ….'" <u>Baloga v. Pittston Area</u>

Sch. Dist., 927 F.3d 742, 758 (3d Cir. 2019) (quoting O'Connor v. Newark, 440 F.3d 125, 128 (3d

Cir. 2006)).  Here, the purportedly retaliatory delay was *de minimis*.[16]

      The delay's potential deterrent effect is best analyzed in two distinct phases corresponding

with the two phases of 21PSTEM's petitioning activity.  The first phase is the delay while the

protest was pending and while the District waited to see if 21PSTEM would file suit.  This delay

lasted less than two months.  The second phase is the subsequent delay in the debriefing while this

litigation was progressing.  This delay lasted for over a year and ended when the District held a

debriefing in August of 2019.

      The first phase cannot support a First Amendment retaliation claim.  It is not reasonable to

conclude that this delay of less than two months would deter a person of ordinary firmness from

exercising his or her constitutional rights.  The simple reason: the delay was minimal.  An

equivalent delay could easily have occurred if Mr. Taylor had a particularly busy month and could

not schedule the debriefing promptly.  Given that this delay could have occurred in the ordinary

course of business, any injury was *de minimis*.  As a matter of law, therefore, it could not deter a

person of ordinary firmness from exercising his or her constitutional rights.

      The second phase cannot support a First Amendment retaliation claim either.  It is not

reasonable to conclude, on this case's facts, that this one-year delay would deter a person of

ordinary firmness from exercising his or her constitutional rights.  21PSTEM did not request a

---

[16] The Court is assessing the purportedly retaliatory delay under only federal law.  The Court expresses no opinion on whether the purportedly retaliatory delay was more than *de minimis* as a matter of state constitutional law.

debriefing after either of its two prior failed bids with the District because, apparently, it did not know that it lost either bid. Thus, 21PSTEM's own sluggishness in securing its own interests has twice caused it much longer delays in receiving useful debriefings than the District's purportedly retaliatory conduct has caused.[17]

That 21PSTEM was uniformed about the outcomes of those two RFPs, or its entitlement to debriefings circa 2013 and 2014, does not change the outcome. "Equity aids the vigilant, not those who rest on their rights." Valenti, 790 F. Supp. at 546. Especially given 21PSTEM's position that "debriefings are the only source of information that is vital to 21PSTEM," MSJ Opp. Br. at 21, 21PSTEM cannot rely on its prior ignorance. 21PSTEM could have made inquiries or done its own research, just as it did here. Minimal inquiries should have revealed that it was entitled to ask for a "vital" debriefing; after all, at all relevant times, the OPS Procurement Manual has made clear that bidders are entitled to ask for bid debriefings. Ultimately, even though the bid debriefings may be valuable to 21PSTEM, it is not reasonable to conclude that the District's purportedly retaliatory conduct would deter 21PSTEM from exercising its rights when the alleged retaliation causes less severe delays than 21PSTEM's own dallying.

---

[17] The conclusion would not change even if 21PSTEM could reasonably have understood that the District had intended to deny 21PSTEM a debriefing altogether. Given that it failed to seek debriefings for over half a decade following its loss of each of the 2013 and 2014 RFPs, it has effectively denied itself a debriefing in each case. For the same reasons that 21PSTEM's sluggishness in both of those cases belies any claim that the District delaying the debriefing here could deter 21PSTEM's petitioning activity, its choice to effectively deny itself a debriefing in each of those cases belies any claim that the District "denying" 21PSTEM a debriefing here could deter 21PSTEM's petitioning activity.

25

Of course, the First Amendment can protect against "even an act of retaliation as trivial as failing to hold a birthday party for a public employee … when intended to punish her for exercising her free speech rights." Rutan v. Republican Party of Ill., 497 U.S. 62, 75 n.8 (1990) (quoting Rutan v. Republican Party of Ill., 868 F.2d 943, 954 n.4 (7th Cir. 1989)); Suppan v. Dadonna, 203 F.3d 228, 234 (3d Cir. 2000) (quoting Rutan, 497 U.S. at 76 n.8).  But that general statement of what may be actionable in particular circumstances does not speak to the facts of this particular case.  It is also worth observing that the oft-referenced birthday party incident was actually part of "a campaign of petty harassments which though trivial in detail may have been substantial in gross," Bart v. Telford, 677 F.2d 622, 624–25 (7th Cir. 1982).  So far as this Court is aware, no local government has ever been held liable for a lone retaliatory decision to not hold a birthday party for a public employee.

Finally, this Court acknowledges that whether a purportedly retaliatory act "rises to the level of an actionable wrong is 'a fact intensive inquiry ….'" Baloga, 927 F.3d at 758 (quoting Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)).  But the mere fact that this inquiry is fact-intensive does not mean that 21PSTEM can survive summary judgment.  Instead, 21PSTEM must show that it could establish at trial that the delay would deter a person of ordinary firmness from exercising his or her constitutional rights.  It has provided neither facts nor caselaw that demonstrate that it could.  And because 21PSTEM has not shown that it could establish this element of its case at trial, the District is entitled to summary judgment on this ground.

2. *The Purported Constitutional Violations Cannot Be Attributed to the District Under Monell Principles*

Like the basic principles of First Amendment retaliation, the basic principles of Monell attribution are well-established.  Local governments may be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury …."  Monell, 436 U.S. at 694.  Under Monell,

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Andrews v. Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted) (alterations in original).  Custom may also be established by proof of knowledge and acquiescence.  Mulholland, 706 F.3d at 237 (quoting Beck v. Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).

Even if the delayed debriefing had represented a violation of 21PSTEM's constitutional rights, these violations cannot be attributed to the District under Monell principles.  21PSTEM cannot show that the District had either a policy or a custom of delaying bid debriefings.  This is yet another reason the District is entitled to summary judgment.

A. Because Taylor is Not a Policymaker for Monell Purposes, 21PSTEM Cannot Show That His Decision to Delay 21PSTEM's Debriefing was "Policy"

Undisputedly, the District has no formal policy of denying debriefings to bid protestors. Instead, 21PSTEM argues that Taylor's decision to delay 21PSTEM's debriefing was "policy"

27

under a series of cases holding that "an official with policymaking authority can create official policy, even by rendering a single decision," McGreevy v. Stroup, 413 F.3d 359, 367–68 (3d Cir. 2005) (referencing Pembaur v. Cincinnati, 475 U.S. 469 (1986)).

To decide whether Taylor's decision to delay 21PSTEM's debriefing was "policy," this Court must first decide whether Taylor has policymaking authority.  An official has policymaking authority "when the official is responsible as a matter of state law for making policy in the particular area of [local] business in question, and the official's authority to make policy in that area is final and unreviewable."  Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238–39 (3d Cir. 2013) (quoting Hill v. Kutztown, 455 F.3d 225, 245–46 (3d Cir. 2006)).  Here, 21PSTEM has neither shown that Taylor is responsible as a matter of state law for making policy on debriefings, nor shown that Taylor's authority with respect to bid debriefings is final and unreviewable.

Taylor is not responsible as a matter of state law for making policy on debriefings. 21PSTEM argues that the School District's Policy 610 delegated policymaking authority to Taylor. But Policy 610, as it stood in 2018, simply required OPS to "establish and maintain a Policies and Procedures Manual to *identify* the district's process for obtaining competitive bids and price quotations *as required by applicable law*."  ECF 40-7 at APP0286 (emphasis added).  The Policy's references to "identify[ing] the district's process … as required by applicable law" suggest that the Policy simply required OPS to document existing protocol based on existing legal obligations. They do not suggest that the Policy transferred any legal authority to create protocol to Taylor or

OPS.   21PSTEM, therefore, has not shown that Taylor had policymaking authority over debriefings.

Moreover, the facts of the Infor dispute show that whatever authority Taylor had over bid debriefings was neither final nor unreviewable.  In the Infor dispute, Infor's lawyers at Blank Rome directed their letter demanding a debriefing to Taylor and the superintendent.  The record shows that the General Counsel reviewed the letter, spoke to the Blank Rome attorneys, and scheduled the debriefing before the deadline Blank Rome had set.  Apparently, the General Counsel had the power to override Taylor.  This rebuts 21PSTEM's claim that Taylor had final, unreviewable authority over bid debriefings.

### B.  21PSTEM Cannot Show That the District Has A Custom of Delaying Bid Debriefings

Again, to show that the District has a custom of delaying bid debriefings, it must show the existence of practices so permanent and well-settled as to virtually constitute law.  Here, at best, 21PSTEM has collected two examples of bid debriefings being delayed because of bidders' petitions or speech.  Those two examples took place within a few months of each other.  This is simply not enough to demonstrate the existence of a "longstanding practice or custom."  21PSTEM has supplied no caselaw that persuades this Court otherwise.

21PSTEM's main contrary argument is that the District's failure to provide more information on bid protests and debriefings changes the calculus.  Boiled down, 21PSTEM's argument is as follows.  Because the District chose not to provide more information to 21PSTEM on bid protestors who requested debriefings, this Court can reasonably infer that a very small

number of bid protestors have ever requested debriefings.  And because the District delayed the bid protestors' debriefings in at least two of that very small number of cases, this Court can reasonably make the further inference that the District had a longstanding practice or custom or delaying bid protestors' debriefings.

The problem with this argument is that it overstates the legal significance of the District's objection during discovery to providing more information on bid protestors who requested debriefings.  All the District did was object to an interrogatory about bid protests and debriefings on burden grounds.  Pl. SUMF ¶ 119.  In response, 21PSTEM could have negotiated a narrower interrogatory; moved to compel a more fulsome response; sought an admission; sought an adverse inference; or perhaps taken other steps.  It did none of these things.  Because it did not, this Court cannot automatically infer that a very small number of bid protestors have ever requested debriefings.

In the absence of any other evidence or compelled inferences on the size of the universe of bid protestors who also requested debriefings, this Court must look to the record to assess what reasonable inferences it could draw about the size of that universe.  The record reflects that contracts with the District can be quite valuable, debriefings are valuable to disappointed bidders, and that a disappointed bidder can lodge a bid protest in an email no longer than a few sentences. Given the value of debriefings, and the low cost and high potential value of bid protests, the Court infers that the universe of bid protestors who also request debriefings must be large enough that the Infor and 21PSTEM incidents alone are not enough for this Court to infer the existence of custom of delaying bid protestors' debriefings.

30

Finally, this Court observes that interpreting the Infor dispute in 21PSTEM's preferred manner creates an impassable obstacle to concluding that the District has a custom of denying debriefings to bid protestors.  21PSTEM would like this Court to believe that the District intended to deny Infor a debriefing altogether, and backed down only under the threat of litigation.  At the same time, the evidence in this case shows only that the District intended to delay 21PSTEM's debriefing.  This Court is thus faced with one instance in which a debriefing was delayed, and another in which a debriefing was denied.  Each instance contradicts any contention that the other represents the District's longstanding practice.  Thus, this case's facts support neither the existence of a longstanding practice of delaying debriefings, nor the existence of a longstanding practice of denying debriefings.

As 21PSTEM cannot prove the existence of a custom of a policy of delaying bid protestors' debriefings, it cannot hold the District liable for the delayed debriefing.

### ii.   Fourteenth Amendment Retaliation Claim

The District is also entitled to summary judgment on 21PSTEM's Fourteenth Amendment retaliation claim.  In its ruling on the Motion to Dismiss, this Court permitted 21PSTEM to proceed on its Fourteenth Amendment claim, but required it "to provide full factual information in discovery to support this claim." 383 F. Supp. 3d at 407.  Now, the District is moving for summary judgment on all of Count Three.  21PSTEM's opposition to the District's motion does not rest on or cite any Fourteenth-Amendment-specific arguments.  Because 21PSTEM does not offer any Fourteenth-Amendment-specific factual or legal reasons that its § 1983 claim can proceed, this

31

Court concludes that the Fourteenth Amendment claim must fall alongside the First Amendment claim.

###### b.   Count Four: State Constitutional Claims Under § 1983

Count Four, the SAC's only remaining Count, alleges that the District violated 21PSTEM's rights under the Pennsylvania Constitution.  As this Court has previously noted, the Pennsylvania Constitution may protect more speech and petitioning activity than the United States Constitution does, 383 F. Supp. 3d at 408.  Thus, resolving 21PSTEM's federal constitutional claims does not resolve its state constitutional claims.

This Court previously exercised supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a).  That statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy …."  Id.  This Court had original jurisdiction over 21PSTEM's federal law claims under 28 U.S.C. § 1331, the federal question jurisdiction statute.  Because the state law claims in this case were closely related to the federal law claims, this Court could exercise supplemental jurisdiction over the former.

Now, none of the claims over which this Court had original jurisdiction survive.  If "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over a claim …."  Id. § 1367(c)(3).

It is appropriate to decline to continue to exercise supplemental jurisdiction here.  The only remaining claims here are state constitutional claims.  Generally, a state court is better positioned

32

to decide state constitutional claims than a federal court exercising supplemental jurisdiction. Because the only remaining claims are better resolved by a Pennsylvania court than this Court, this Court will decline to exercise continued supplemental jurisdiction over Count Four.

This Court shall remand this case to state court.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Having declined jurisdiction over Count Four, this Court lacks subject matter jurisdiction over this case and must remand this matter to state court.

## V.   <u>Conclusion</u>

For the foregoing reasons, the District's Motion for Summary Judgment will be GRANTED as to Count Three and DENIED otherwise, and the case will be remanded to state court.  An appropriate Order follows.

O:\CIVIL 18\18-3982 Weathers v School District of Phila\18cv3982 Memo re Motion for Summary Judgment.docx